[No. F006805. Fifth Dist. Sept. 3, 1987.]

AURELIO RAMARIZ, Plaintiff and Appellant, v.
COUNTY OF MERCED et al., Defendants and Respondents.

**COUNSEL**

Poel & Kavalaris and Lee Edward Poel for Plaintiff and Appellant.

Silviera, Mattos & Lewis, Thomas E. Lewis, Martin Crabtree, Schmidt & Zeff, Thomas D. Zeff, Bronson, Bronson & Mckinnon, Kevin G. McCurdy, Paul H. Cyril and Elliot L. Bien for Defendants and Respondents.

**OPINION**

**BEST, J.—**

### PROCEDURAL AND FACTUAL BACKGROUND

On August 29, 1982, plaintiff, Aurelio Ramariz, injured himself, suffering quadriplegia, when he allegedly struck his head on an object while swimming in Lake Yosemite. His devastating injuries, inability to speak English, lack of family in the area, and his ignorance of the Government Code resulted in his not filing a claim within the 100 days as required. (Gov. Code,[1] § 900 et seq.)

Lake Yosemite is owned by defendant Merced Irrigation District and is operated by the Parks and Recreation Division of defendant County of Merced. Lake Yosemite is part of Lake Yosemite Park, which has an area

---

[1] All statutory references are to the Government Code unless otherwise indicated.

of more than 460 acres. The lake itself has a circumference of approximately 3.6 miles and is used primarily as a water storage area and flood control facility for the Merced Irrigation District.

The lake's recreational facilities include beaches and swimming areas, boat rental facilities, docks and ramps for boating, a number of different piers, camping areas, cooking facilities, concession stands, and picnic tables. Thousands of persons utilize these facilities each year. There are a number of different people working at the lake at various times, including up to six lifeguards, other paid employees of the Parks and Recreation Division, and a sheriff's patrol.

Defendants first received "notice" of the alleged accident on April 1, 1983, when an investigator retained by plaintiff's attorney contacted George E. Rodrigues, Assistant Director of the Parks and Recreation Division, and informed Mr. Rodrigues that plaintiff had allegedly injured himself diving off a pier at Yosemite Lake. No details of the alleged incident were provided, nor did the investigator make any mention of a possible claim or loss against defendants. The first formal notice of a claim came 255 days after the alleged accident on May 12, 1983, when plaintiff filed an application for leave to file a late claim and the proposed claim for damages. The claim was denied on May 27, 1983.

On June 20, 1983, plaintiff filed a complaint for damages against defendants in Merced County Superior Court. Defendants demurred to the complaint on the ground that plaintiff had failed to comply with the claim filing requirements of the Government Code. Plaintiff subsequently filed a motion for relief from complying with the claims requirement. On August 18, 1983, after a hearing, the trial court denied the petition and sustained the demurrers.

Plaintiff appealed, and in an unpublished opinion (No. F003170) filed on March 25, 1985, this court reversed the trial court's ruling, holding that plaintiff's failure to timely file his claim was the result of excusable neglect pursuant to section 946.6, subdivision (c)(1), and that his application for leave to file a late claim was made within a reasonable time. This court remanded the case to the trial court for a determination of whether defendants were prejudiced by plaintiff's delay in filing. (§ 946.6, subd. (c)(1).)

On remand, the County of Merced filed a motion for denial of relief from the claims requirement and dismissal of plaintiff's complaint on November

1, 1985. The Merced Irrigation District joined in the motion. In support of its motion, the County of Merced submitted declarations from George E. Rodrigues, Neal Trost, an insurance adjuster and investigator for the County of Merced, and William L. Garrett, the county's attorney. The Merced Irrigation District submitted supporting declarations from its attorney, Thomas D. Zeff, and Jay B. Anderson, secretary and manager of the district.

On November 25, 1985, plaintiff filed a memorandum of points and authorities in opposition to defendants' motion. Plaintiff did not submit any affidavits or declarations in support of its opposition. The opposition contained a number of references to the clerk's transcript from the first appeal, although no attempt was made to introduce that transcript or to have it judicially noticed.

Defendants' motion was heard on December 9, 1985, and an order denying relief of the claims requirement and for dismissal of plaintiff's complaint was entered on January 16, 1986. The court held plaintiff's tardiness prevented defendants from properly investigating the accident, thereby causing prejudice.

## DISCUSSION

This court having determined in case No. F003170 that plaintiff's failure to present a claim within the 100-day period specified in section 911.2 was due to excusable neglect and further, that his application to file a late claim pursuant to section 911.4 was made within a reasonable time, the only issue before the trial court on remand was whether defendants would be prejudiced if plaintiff was relieved of the claim filing requirements of section 945.4. Following further hearing, the trial court again denied plaintiff's motion for relief, stating: "The Court finds that the lateness in seeking relief from the claims requirements prevented the defendants from locating any persons, whether employees, bystanders or emergency personnel who had any knowledge of the incident, or being able to develop any information as to the location or causation of the incident. Accordingly, the defendants have suffered prejudice."

By the express provisions of subdivision (c)(1) of section 946.6,[2] once it has been shown that an application for leave to file a late claim was made

---

[2] Section 946.6 provides in pertinent part as follows: "(c) The court shall relieve the petitioner from the provisions of Section 945.4 if the court finds that the application to the board under Section 911.4 was made within a reasonable time not to exceed that specified in subdi-

within a reasonable time and that the failure to present a timely claim "was through mistake, inadvertence, surprise or excusable neglect" the burden shifts to the public entity to establish by a preponderance of the evidence that it would be prejudiced if the court relieves the petitioner from the provisions of section 945.4. (See Evid. Code, § 115.)

Although we have found no reported cases defining what constitutes prejudice in this context, we agree with the following: "The entity's showing of prejudice, when asserted, appears to require a factual basis for concluding that the delay has substantially impaired the entity's ability to present a full and fair defense on the merits." (Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) p. 517.)

■ The determination of the trial court granting or denying a petition for relief under section 946.6 will not be disturbed on appeal except for an abuse of discretion. (*Ebersol* v. *Cowan* (1983) 35 Cal.3d 427, 435 [197 Cal.Rptr. 601, 673 P.2d 271].) However, the appellate standard of review in examining cases where the trial court has denied a petition for relief under the Tort Claims Act is more rigorous because the law favors the hearing of matters on their merits, rather than upholding a strict adherence to procedural doctrine. (*County of Santa Clara* v. *Superior Court* (1971) 4 Cal.3d 545, 552 [94 Cal.Rptr. 158, 483 P.2d 774].) In our view, where, as here, the only issue before the trial court is whether the public entity would be "prejudiced" within the meaning of section 946.6, subdivision (c)(1), an abuse of discretion will exist if the finding of the trial court is not supported by substantial evidence.

■ In the instant case, defendants brought a motion to dismiss before the trial court pursuant to the earlier decision of this court which remanded the case for a hearing on the issue of prejudice. The County of Merced presented three declarations in support of its motion, while the Merced Irrigation District presented two. George E. Rodrigues, Assistant Director of the Parks and Recreation Division, stated that the first knowledge he had of the alleged accident came on April 1, 1983, when he was contacted by Barry S. Fisher, an investigator retained by plaintiff's counsel. After receiving this "notice," Mr. Rodrigues unsuccessfully attempted to investigate the incident. He was unable to locate several lifeguards who were on duty the day of the accident because they had departed the area prior to the receipt

---

vision (b) of Section 911.4 and was denied or deemed denied pursuant to Section 911.6 and that:

"(1) The failure to present the claim was through mistake, inadvertence, surprise or excusable neglect unless the public entity establishes that it would be prejudiced if the court relieves the petitioner from the provisions of Section 945.4; . . ."

of notice. In addition, he could not identify any eyewitnesses, ascertain the location of the alleged accident, or determine any other factual details of the incident. However, as pointed out by plaintiff, Mr. Rodrigues did not state that the lake had changed in any significant way. In fact, his declaration tends to establish that the lake has remained the same since the time of the alleged accident. Thus, the only possible prejudice shown by Rodrigues's declaration is that he was unable to obtain any eyewitnesses and failed to locate several of the lifeguards who were on duty on the day of the accident.

Neal Trost, an insurance adjuster and private investigator who investigated the alleged incident for the County of Merced, also submitted a declaration in an attempt to establish the alleged prejudice suffered by defendants. Despite a diligent investigation of this matter, Mr. Trost was unable to locate or question any eyewitnesses, locate the precise place where the incident allegedly occurred, locate or preserve any physical evidence of the accident, or obtain any relevant factual data concerning the accident.

Mr. Jay B. Anderson, the secretary-manager of the Merced Irrigation District, also submitted a declaration noting that he received plaintiff's application for leave to present the late claim. At that time, he inquired of the department to see if the county was aware of the incident. He also presented the application to the Merced Irrigation District's board of directors. After the denial by the board, Anderson turned the application over to the Merced Irrigation District's insurance carrier for further handling. He further stated that the Merced Irrigation District had no knowledge of plaintiff's alleged accident until receipt of the application for leave to present a late claim. Finally, Mr. Anderson noted that the irrigation district suffered the same, if any, prejudice as the County of Merced.

In addition, based on the declarations of Rodrigues, Trost and Anderson, defendants' attorneys filed declarations stating their "opinions" that the defendants had suffered prejudice due to the late claim.[3]

In the instant case, plaintiff is proceeding on the theory of dangerous condition of public property. (§ 835.) Under this theory, liability can be imposed either if the entity created the condition or, with actual or constructive notice, did not protect against it. A dangerous condition of property is one that creates a substantial risk of injury if the property is used with

---

[3] Of course, opinions which have no factual support can be given little, if any, weight even if they are properly before the court due to failure of objection. The question of whether the court could consider the opinions in support of the motion and the question of proper reliance on them are two totally different questions.

due care in a manner in which it is reasonably foreseeable that it will be used. (§ 830, subd. (a).) ▇ Defendants contend that "The concurrent observations of witnesses and the physical evidence at the time of the accident are vital to the entity's defense in this type of case. A 'dangerous condition' of property at the time of an accident, unlike the transient mechanics of an automobile collision, may exist after the accident. Here [defendants] had no chance to ascertain what existed or to preserve the evidence." Defendants conclude that, given the jury sympathy factors favoring a severely injured plaintiff, the courtroom realities compel a finding of prejudice.

Defendants' declarations show only that they have been unable to find any witnesses having knowledge of plaintiff's alleged injury nor any physical evidence which may have contributed to said injury and have been unable to determine where the alleged injury is supposed to have occurred. Completely absent is any showing that any such witness or physical evidence would have been discoverable had plaintiff filed a claim within the 100-day statutory period, or any change of circumstances which could have affected the location of the incident causing plaintiff's injury, such as a change in the water level of the lake. On the basis of the evidence before the trial court, whether there ever were any such witnesses, physical evidence or change of circumstance is a matter of pure speculation. Under these circumstances, there was no substantial evidence to support the trial court's finding that defendants suffered prejudice. It necessarily follows that the trial court abused its discretion in denying plaintiff's petition for relief from the claim filing requirements.

The cases relied upon by defendants in support of their contentions are not helpful.

In support of their contention, defendants cite several cases. In *Morrill* v. *City of Santa Monica* (1963) 223 Cal.App.2d 703 [35 Cal.Rptr. 924], the plaintiff, a minor, was involved in a slip and fall accident in an area operated by the city, but did not file a petition for relief until 14 months after the accident. In the verified petition, plaintiff alleged that the physical characteristics of the scene had not changed and that any possible witnesses to the accident were still available. The city failed to appear at the hearing on the petition, and instead filed a declaration the day after the hearing stating that it had not investigated the accident. The trial court granted the petition and the Court of Appeal affirmed, refusing to find that the city had been prejudiced. Defendants contend that "The clear implication of the decision is that had the scene changed or the witnesses been unavailable, the City

would have been prejudiced and relief would have been denied." It appears, however, that if there is any implication from the decision, whether clear or unclear, it is simply that the uncontradicted factual allegations in the verified petition were sufficient to support the trial court's finding that, under the circumstances, there was no prejudice.

In *O'Brien* v. *City of Santa Monica* (1963) 220 Cal.App.2d 67 [33 Cal.Rptr. 770], the plaintiff was allegedly injured when a bus driver closed the door on her head and knees. Although she failed to file a claim within the statutory period, the court found that the city was not prejudiced: "The undisputed facts in the verified petition and Koops' affidavit clearly reveal that the city will not be unduly prejudiced if she is permitted to present her claim. On the day after the accident the city, through its representative Barrett, 'was informed concerning the time, place and nature of the occurrences which gave rise to her claim' by Koops [plaintiff's son-in-law] who reported to him the full nature and extent thereof. From this and Barrett's letter to Koops purportedly enclosing 'medical report forms to be duly completed by Dr. J. Robert Tolle, physician for your mother-in-law,' and advising that upon their return he would contact Koops 'to further discuss *this claim,*' the only reasonable inference is that the city, the day after the accident, knew the details of the accident, that plaintiff had been injured and that she had a claim against it, and the name and address of the person then acting on her behalf and to whom correspondence could be forwarded. Had the city then wanted to investigate the accident and the full extent of plaintiff's injuries it could well have done so. If any undue prejudice results to the city, it will be due to its own failure to act, not to the late filing of Mrs. O'Brien's claim. Except for the exact amount of damage and the full extent of her injuries, *it appears that plaintiff may have orally given to the city sufficient information to constitute a claim the day after the accident occurred.* We do not here have the situation wherein the claimant remains silent for the period during which a claim may be filed leaving the public entity unaware of an accident, injury and possible claim, thereby precluding it from making an effective investigation." (*Id.* at p. 75, last italics added.)

Defendants contend that the instant case involves the situation distinguished by the *O'Brien* court—plaintiff remained silent well beyond the 100-day period, leaving defendants unaware of the accident and the injury and unable to conduct an effective investigation. However, as we have previously shown, defendants have failed to show that they would have been able to conduct a more effective investigation had plaintiff's claim been timely filed.

Similarly, the cases of *Purefoy* v. *Pacific Automobile Indem. Exch.* (1935) 5 Cal.2d 81 [53 P.2d 155], *Valladao* v. *Fireman's Fund Indem. Co.* (1939)

13 Cal.2d 322 [89 P.2d 643], and *Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865 [151 Cal.Rptr. 285, 587 P.2d 1098] are not helpful on the issue of prejudice since there is no 100-day grace period applicable to insurance companies as there is with regard to public entities.

The judgment of dismissal is reversed. The trial court is directed to vacate its order denying plaintiff's petition for relief from the claim filing requirements and to enter a new order granting plaintiff's petition.

Appellant shall recover his costs on appeal.

Franson, Acting P. J., and Martin, J., concurred.

A petition for a rehearing was denied September 29, 1987, and respondents' petition for review by the Supreme Court was denied November 18, 1987.