Filed 3/7/14 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| J.J., a Minor, etc., et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>COUNTY OF SAN DIEGO,<br><br>    Defendant and Respondent. | D062594<br><br>(Super. Ct. No. 37-2012-00098644-CU-PT-CTL)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT

It is ordered that the opinion filed herein on February 14, 2014 be modified as follows:

On page 21, after the final sentence ending with "costs on appeal," add as footnote 5 the following footnote:

> 5    In her petition for a rehearing, J.J., appearing through her guardian ad litem, Ja.J., for the *first time* contends that Government Code section 905 applies to her case. We express no opinion on this issue, however; as a court of review, we will not "'submit to piecemeal argument and will not consider on petition for rehearing questions not previously raised'" absent extraordinary circumstances, which are not present in the instant case. (See *Epperson v. Rosemond* (1950) 100 Cal.App.2d 344, 348; see also *Sanders v. Howard Park Co.* (1948) 86 Cal.App.2d 721, 723 [noting an "argument based upon a point not mentioned in the original brief of the petitioner will be of no avail on

[petitioner's] demand for a rehearing"].)

The petition for rehearing filed on February 26, 2014 has been considered by Justices Benke, McIntyre and Irion and is denied.

THERE IS NO CHANGE IN JUDGMENT

_____

BENKE, Acting P. J.

Copies to:  All parties

Filed 2/14/14 (unmodified version)
CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| J.J., a Minor, etc., et al.,<br><br>  Plaintiffs and Appellants,<br><br>  v.<br><br>COUNTY OF SAN DIEGO,<br><br>  Defendant and Respondent. | D062594<br><br><br>(Super. Ct. No. 37-2012-00098644-CU-PT-CTL) |

APPEAL from an order of the Superior Court of San Diego County, William R. Nevitt, Jr., Judge.  Affirmed.

Elaine L. Heine for Plaintiffs and Appellants.

Thomas E. Montgomery, County Counsel, and David G. Axtmann, Deputy County Counsel, for Defendant and Respondent.

Plaintiff and appellant J.J., appearing through her guardian ad litem, Ja.J., appeals from an order denying her petition brought under Government Code[1] section 946.6 (petition) for relief from the requirement in section 945.4 that she timely file a written

_____

1     Unless otherwise noted, all statutory references are to the Government Code.

claim against the County of San Diego (County) before she can maintain an action against the County for money or damages.

J.J. contends the court erred in denying her petition because her cause of action against the County accrued in March 2012, after her legal counsel obtained a San Diego Police Department "Investigator's Follow-up Report" dated January 14, 2011 (January 2011 report). J.J. contends this report for the first time showed the County's negligence was the cause of her personal injury after her foster father, R.L., sexually molested her while she was living in foster care in the family home of R.L. between July 17, 2009 and September 18, 2009. Because she filed her claim with the County in May 2012, J.J. contends it was timely presented. J.J. alternatively contends that the County is estopped from asserting the alleged untimeliness of her claim and that her alleged late filing of the claim was the result of excusable neglect.

The County contends that J.J.'s personal injury cause of action accrued when she was molested by R.L. in 2009 because she knew then it was wrong or, at the latest, in early March 2011 when J.J.'s parents (after reunification) attended and spoke at R.L.'s sentencing. J.J. in December 2010 had disclosed the molestation to her parents and County social workers, which led to a police investigation and ultimately to R.L. pleading guilty to one count of committing a lewd and lascivious act on a minor under the age of 14, in violation of Penal Code section 288, subdivision (a). Because J.J. neither filed her claim within six months from the accrual of her cause of action nor filed her petition to seek relief from her late claim within one year from the accrual of her cause of action, the

County contends the court properly denied the petition.  The County also contends neither estoppel nor excusable neglect apply in this case.

As we explain, because J.J.'s cause of action accrued at the latest in March 2011 and because J.J. did not submit a claim to the County until May 2012—more than a year later—we are constrained to conclude the court properly denied her petition, inasmuch as we also conclude her claim was not timely as a result of the principles of estoppel or excusable neglect.  Affirmed.

## DISCUSSION

A.  *Guiding Principles*

"The Government Claims Act (§ 810 et seq.) 'establishes certain conditions precedent to the filing of a lawsuit against a public entity.  As relevant here, a plaintiff must timely file a claim for money or damages with the public entity.  (§ 911.2.)  The failure to do so bars the plaintiff from bringing suit against that entity.  (§ 945.4.)'  (*State of California v. Superior Court* (2004) 32 Cal.4th 1234, 1237.)  '[T]he claims presentation requirement applies to all forms of monetary demands, regardless of the theory of the action. . . .'  [Citation.]  'The policy underlying the claims presentation requirements is to afford prompt notice to public entities.  This permits early investigation and evaluation of the claim and informed fiscal planning in light of prospective liabilities.'  (*Ibid.*)

"Claims for personal injury must be presented not later than six months after the accrual of the cause of action . . . .  (§ 911.2, subd. (a).)  Timely claim presentation is not merely a procedural requirement, but is a condition precedent to the claimant's ability to

3

maintain an action against the public entity. (*Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201, 209.)  'Only after the public entity's board has acted upon or is deemed to have rejected the claim may the injured person bring a lawsuit alleging a cause of action in tort against the public entity.' (*Ibid.*)

"The failure to timely present a claim to the public entity bars the claimant from filing a lawsuit against that public entity. (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 454.)  Moreover, because the purpose of the claims is not 'to prevent surprise [but rather] is to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation . . . [citations][,] . . . [i]t is well-settled that claims statutes must be satisfied even in face of the public entity's actual knowledge of the circumstances surrounding the claim.  Such knowledge—standing alone—constitutes neither substantial compliance nor basis for estoppel.' (*Id.* at p. 455.)" (*California Restaurant Management Systems v. City of San Diego* (2011) 195 Cal.App.4th 1581, 1591-1592.)

Accordingly, a claim for personal injuries—such as in the instant case—must be filed with the public entity (i.e., County) no later than six months after the accrual of the cause of action. (§ 911.2, subd. (a).)  However, "if the injured party fails to file a timely claim, a written application may be made to the public entity for leave to present such claim. (Gov. Code, § 911.4, subd. (a).)  If the public entity denies the application, Government Code section 946.6 authorizes the injured party to petition the court for relief from the claim requirements." (*Munoz v. State of California* (1995) 33 Cal.App.4th 1767, 1777 (*Munoz*), fn. omitted.)

4

Subdivision (a) of section 946.6 states in relevant part that "[i]f an application for leave to present a claim is denied or deemed to be denied pursuant to Section 911.6, a petition may be made to the court for an order relieving the petitioner from Section 945.4 [i.e., necessity of written claim]. The proper court for filing the petition is a superior court that would be a proper court for the trial of an action on the cause of action to which the claim relates. If the petition is filed in a court which is not a proper court for the determination of the matter, the court, on motion of any party, shall transfer the proceeding to a proper court." Subdivision (b)(1) of section 946.6 requires the petitioner show among other things that the "application was made to the board under Section 911.4 and was denied or deemed denied." Under subdivision (c) of section 946.6, a court "shall relieve the petitioner from Section 945.4 if the court finds that the application to the board under Section 911.4 was made within a reasonable time not to exceed that specified in subdivision (b) of Section 911.4," among other requirements.

Subdivision (a) of section 911.4 provides that when a claim required by section 911.2 is not presented within six months after the accrual of the cause of action, a party may make a "written application" to the public entity for leave to present that claim. Subdivision (b) of section 911.4 provides that such application shall be presented to the public entity "within a reasonable time *not to exceed one year after the accrual of the cause of action . . . .*" (Italics added.) Subdivision (c)(1) of that statute provides that in computing the one-year period, the "time during which the person who sustained the alleged injury, damage, or loss *as a minor shall be counted*, but the time during which he or she is mentally incapacitated and does not have a guardian or conservator of his or her

person shall not be counted." (Italics added; see also *John R. v. Oakland Unified School Dist.* (1989) 48 Cal.3d 438, 444, fn. 3 (*John R.*) [noting that while a statute of limitations generally "does not run during the time a potential plaintiff is a minor, and such a party accordingly has up to a year after attaining the age of majority to bring suit on a cause of action for personal injury," "[t]his respite does not apply to a claim against a public entity," as expressly stated in § 911.4, subd. (b)].)

"The determination of the trial court in granting or denying a petition for relief under Government Code section 946.6 will not be disturbed on appeal except for an abuse of discretion. Abuse of discretion is shown where uncontradicted evidence or affidavits of the plaintiff establish adequate cause for relief. (*Ebersol v. Cowan* (1983) 35 Cal.3d 427, 435.)

"Government Code section 946.6 is a remedial statute intended to provide relief from technical rules which otherwise provide a trap for the unwary. The remedial policy underlying the statute is that wherever possible cases should be heard on their merits. Thus, a *denial* of such relief by the trial court is examined more rigorously than where relief is granted and any doubts which may exist should be resolved in favor of the application. (*Bettencourt v. Los Rios Community College Dist.* [(1986)] 42 Cal.3d [270,] 275-276; *Drummond v. County of Fresno* [(1987)] 193 Cal.App.3d [1406,] 1410-1411.)

"Relief from the six-month limit is granted under the same showing as is required for relief under Code of Civil Procedure section 473. (*Viles v. State of California* (1967) 66 Cal.2d 24, 29 [construing predecessor statutes].) It is the well-recognized policy of the law to liberally construe remedial statutes designed to protect persons within their

6

purview, and the modern trend of judicial decisions favors granting relief unless absolutely forbidden by statute." (*Munoz, supra*, 33 Cal.App.4th at p. 1778.)

However, "[f]iling a late-claim application within one year after the accrual of a cause of action is a jurisdictional prerequisite to a claim-relief petition. (*Santee v. Santa Clara County Office of Education* [(1990)] 220 Cal.App.3d [702,] 713.) When the underlying application to file a late claim is filed more than one year after the accrual of the cause of action, the court is without jurisdiction to grant relief under Government Code section 946.6. (*Greyhound Lines, Inc. v. County of Santa Clara* (1986) 187 Cal.App.3d 480, 488.)" (*Munoz, supra*, 33 Cal.App.4th at p. 1779; see also § 911.4, subd. (b).)

The primary issue on appeal is when J.J.'s cause of action accrued. Although J.J. filed the petition seeking relief from the requirement in section 945.4 that she timely file a written claim against the County, she nonetheless maintains that her personal injury cause of action did not accrue until March 2012 when she first obtained the January 2011 report. As such, there would have been no reason for J.J. to file the petition because, if correct, her claim would have been presented to the County "not later than six months" after its accrual for purposes of section 911.2, inasmuch as she filed her claim with the County in May 2012.

If, however, her cause of action accrued in March 2011 at the latest, when her parents both appeared and spoke at the sentencing of R.L. after he pled guilty to molesting J.J., then her claim against the County would have been untimely both for purposes of sections 911.2 *and* 946.6 because, as noted, the latter statute requires that a

7

petition be filed with the public entity (i.e., the County) not more than one year after it accrued.  We thus turn to the overarching issue in this appeal regarding *when* J.J.'s cause of action against the County accrued.

B.  *Accrual of Personal Injury Cause of Action*

J.J.'s May 2012 claim filed with the County states the County is potentially liable in negligence for the placement, lack of supervision, and/or failure to investigate/prevent sexual abuse in the foster home of R.L.

"For the purpose of computing the time limits prescribed by Sections 911.2, 911.4, 945.6, and 946.6, the date of the accrual of a cause of action to which a claim relates is the date upon which the cause of action would be deemed to have accrued within the meaning of the statute of limitations which would be applicable thereto if there were no requirement that a claim be presented to and be acted upon by the public entity before an action could be commenced thereon."  (§ 901; see also *John R.*, *supra*, 48 Cal.3d at p. 444, fn. 3.)

"A civil cause of action for child molestation generally accrues at the time of the molestation."  (*Doe v. Bakersfield City School Dist.* (2006) 136 Cal.App.4th 556, 567, fn. 2.)  "That date may be postponed under the delayed discovery doctrine.  [Citation.] Under this doctrine, a cause of action does not accrue until the plaintiff discovers, or has reason to discover, the cause of action.  [Citation.]  A plaintiff has reason to discover a cause of action when he or she has reason to at least suspect a factual basis for its elements.  Suspicion of one or more of the elements, coupled with knowledge of any remaining elements, will generally trigger the applicable limitations period.  [Citation.]

8

This refers to the 'generic' elements of wrongdoing, causation, and harm and does not require a hypertechnical approach. Instead, 'we look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them.' [Citation.]" (*S.M. v. Los Angeles Unified School Dist.* (2010) 184 Cal.App.4th 712, 717 (*S.M.*).)

*S.M.* provides guidance on this issue. There, the minor plaintiff sued a public entity (i.e., the district) for negligent supervision of a teacher after the plaintiff was repeatedly fondled by her fourth grade teacher during the school year. The plaintiff testified that she knew what her teacher had done was "wrong" and that his actions made her "scared and nervous." (*S.M.*, *supra*, 184 Cal.App.4th at p. 715.) As a result of this testimony, the district contended the plaintiff's negligence cause of action accrued at the latest on the last day of school in June 2003 because the plaintiff had no further contact with the teacher from that day forward. As a result, the district contended the plaintiff's claim was barred because she did not file a claim with the district until nearly two years later. (*Id.* at p. 717.)

The plaintiff contended her cause of action did not accrue until the day the teacher was arrested (i.e., in mid-October 2004), when the plaintiff's mother that same day spoke to her and learned for the first time about the sexual abuse by the teacher. The trial court disagreed and entered judgment for the district. (*S.M.*, *supra*, 184 Cal.App.4th at p. 716.) The Court of Appeal affirmed.

In so doing, the court in *S.M.* distinguished the facts of *Curtis T. v. County of Los Angeles* (2004) 123 Cal.App.4th 1405 (*Curtis T.*) from its case. Briefly, in *Curtis T.*, the minor plaintiff was placed in foster care at the age of five where he lived for about three

years until October 1999, when he was returned to his mother. In March 2003, when the plaintiff was 12, he filed a claim with the defendant county alleging that he was sexually molested by another child while living in the foster home. When the defendant denied the claim as untimely, the plaintiff sued, alleging that his foster parent knew about the molestation but did not stop it and that his mother did not learn about the molestation until September 2002. The trial court in *Curtis T.* sustained the defendant's demurrer without leave to amend. (*Id.* at p. 1409.)

In reversing, the *Curtis T.* court held the plaintiff should have been given leave to amend his complaint that "given his youth, ignorance, and inexperience, as well as his foster parent's alleged complicity in the abuse—that he lacked a real awareness, until his mother's discovery of the alleged molestation, that what happened to him between the ages of five and eight was wrong." (*Curtis T.*, *supra*, 123 Cal.App.4th at pp. 1422-1423.)

The *S.M.* court concluded that *Curtis T.* "did not hold that a minor's cause of action for sex abuse accrues only when a parent learns what happened. Instead, it adopted a circumstance-heavy approach, pegged to the unique facts of each case, and held that, given the right circumstances, a minor suing for sexual abuse is entitled to show that the cause of action did not accrue until a parent learned what happened or some other date after the abuse occurred." (*S.M.*, *supra*, 184 Cal.App.4th at pp. 719-720.)

The court in *S.M.* also discussed the case of *V.C. v. Los Angeles Unified School District* (2006) 139 Cal.App.4th 499 (*V.C.*), which had applied *Curtis T.* to sustain without leave to amend the district's demurrer to the minor's complaint. There, the plaintiff, while between the ages of 11 and 13, was allegedly molested by her teacher.

10

Although the record included a psychological assessment that cast doubt on whether the minor plaintiff truly appreciated what the teacher had done to her, "it also showed that plaintiff's mother had long harbored suspicions that the teacher was molesting her daughter. As a result, the plaintiff could not plead facts supporting a delayed discovery theory." (*S.M.*, *supra*, 184 Cal.App.4th at p. 720, citing *V.C.*, at pp. 504, 515-516.)

Based on *Curtis T.* and *V.C.*, the court in *S.M.* concluded that the plaintiff had not proffered any evidence to support the application of the delayed discovery rule in her case and the "factors that might have prevented [the minor plaintiff] from becoming aware she had been wronged, or about her mother's discovery of what had happened." (*S.M.*, *supra*, 184 Cal.App.4th at p. 720.) Because the minor knew the "generic elements of her claim—that she had been injured by [her teacher's] wrongdoing" and because she relied "solely on the mistaken belief that, as a matter of law, it was her mother's knowledge that counted, not hers," the court affirmed the grant of summary judgment in favor of the district. (*Ibid.*)

Here, J.J. concedes that she was aware of the fact that she had been sexually molested by her foster father in 2009. Moreover, the record shows that in December 2010, J.J. disclosed the details of the molestation both to her parents and to County social workers. As a result of that disclosure, an investigation was launched and J.J. was interviewed at a children's hospital in early January 2011; R.L. ended up pleading guilty to one count of committing a lewd and lascivious act on a minor under the age of 14 in violation of Penal Code section 288, subdivision (a). In addition, the record shows that both of J.J.'s parents attended and spoke at R.L.'s sentencing in early March 2011.

11

Even if we assume there was evidence in the record showing J.J. at the time of the molestations (i.e., between July & September 2009) lacked a real awareness that R.L.'s sexual abuse was "wrong" (see *Curtis T.*, *supra*, 123 Cal.App.4th at p. 1423) and thus that she had been "injured" (see *Leaf v. City of San Mateo* (1980) 104 Cal.App.3d 398, 406 (*Leaf*) [applying delayed discovery rule]), and even if we conclude the delayed discovery rule applies to her situation, we nonetheless are constrained to conclude that J.J.'s cause of action for personal injuries accrued at the latest in early March 2011, when her parents appeared and spoke at the sentencing hearing of R.L. (See *Curtis T.*, *supra*, 123 Cal.App.4th at pp. 1422-1423.) At that point in time, J.J.'s parents clearly were aware of the "'generic' elements of wrongdoing, causation and harm" (see *S.M.*, *supra*, 184 Cal.App.4th at p. 717) resulting from R.L.'s molestation of their daughter while in foster care. Because J.J. filed her claim in May 2012, which was more than six months (see § 911.2) and more than a year (see §§ 911.4, subd. (b) & 946.6, subd. (c)) after her claim accrued, it was untimely and thus barred. (See *Munoz*, *supra*, 33 Cal.App.4th at p. 1779.)

In reaching our decision, we note the important policy implications of requiring a claimant to give a public entity "'prompt notice'" of a claim (see *California Restaurant Management Systems v. City of San Diego*, *supra*, 195 Cal.App.4th at p. 1591), particularly in a case such as the one before us involving allegations of sexual abuse against a dependent child under the custody, control and supervision of one or more public entities (i.e., the County). Requiring a claimant in such circumstances to give prompt notice will permit "'early investigation and evaluation of the claim'" (see *ibid.*) by

12

the public entity or entities, which could potentially prevent or limit any additional sexual abuse to the claimant and/or others similarly situated. (See, e.g., Welf. & Inst. Code, § 300.2 [noting the purpose of the law "relating to dependent children is to provide maximum safety and protection for children"].)

Moreover, we disagree with J.J.'s contention that cases such as *Leaf v. City of San Mateo* apply here and protect a plaintiff who "'despite diligent investigation . . . is blamelessly ignorant of the cause of his [or her] injuries.'" *Leaf* involved the 10-year statute of limitations in then-applicable Code of Civil Procedure 337.15, which protects developers of real estate from unlimited claims for property damage cause by *latent* construction defects. (*Leaf*, *supra*, 104 Cal.App.3d at p. 402.)

In *Leaf*, the court reversed summary judgment in favor of the city because a triable issue of fact existed whether the plaintiff homeowners had exercised reasonable diligence in discovering that a cave-in on their property was caused by the city's failure to compact properly the storm and sewer trenches on and near the plaintiffs' property, as opposed to the failure of the developer/builder of the property to install a subsurface drainage system at the time of development. (*Leaf*, *supra*, 104 Cal.App.3d at pp. 403-404.) Clearly, *Leaf* is factually and legally distinguishable from the instant case, inasmuch as there is no issue here involving a latent defect to real property causing damage from multiple possible sources.

Although we conclude J.J.'s personal injury cause of action accrued, at the latest, in March 2011, we nonetheless independently reviewed the January 2011 report (that she

13

obtained in March 2012), which J.J. contends was the basis of her knowledge of wrongdoing by the County. J.J. highlights five[2] facts from that report:

(1) R.L., J.J.'s foster father, molested J.J. while she was in his care sometime between July 17 and September 18, 2009.

(2) Police in December 2010 received a referral from County social workers reporting that J.J. disclosed she had been molested by R.L. in 2009.

(3) R.L.'s wife, the foster mother, worked for "the Department of Health and Human Services."

(4) J.J. ran away from her foster home on September 17, 2009, the day of her birthday. A neighbor called police. After police determined J.J. had no injuries, they contacted social services and then returned J.J. to her foster home. The *next* day, September 18, J.J. was removed from the family home of R.L. and taken to the Polinsky Children's Center.[3]

---

[2] J.J. in her opening brief states police responded to two separate incidents in September 2009 regarding J.J. However, it appears there was only one incident, which occurred on September 17, 2009. The "second" alleged incident referred to by J.J. on September 21, 2009 appears to be the investigating detective's description of the incident in the January 2011 report, in which he refers to an emergency response referral dated September 21, 2009 regarding the September 17 incident.

[3] In connection with this incident, R.L.'s wife stated during a police interview that the night J.J. ran away, J.J. told her she had left the family house because she was disappointed her foster family was "not black." According to R.L.'s wife, when she asked J.J. that night if she wanted to find another family to live with, J.J. said "she was fine to stay with us." Nonetheless, the following day R.L.'s wife spoke to a County social worker and suggested that J.J. find another place to live because R.L.'s wife "didn't want [J.J.] to run off again."

14

(5)  R.L. disclosed during a January 13, 2011 police interview that J.J. had been drawing pictures of a "face with an angry person with a mustache and a beard" while living in the family home and that those pictures had been turned over to a social worker.

J.J. in her opening brief does not specifically address how these additional facts from the January 2011 report support her contention that she was not aware, or could not reasonably have become aware (before she obtained a copy of that report in March 2012), that the County was potentially liable for placing her, supervising her, and/or preventing sexual abuse in the foster home of R.L. and his family.  In any event, our independent review of the January 2011 report, including these facts, does not change our conclusion that J.J.'s negligence cause of action against the County, as set forth in her May 2012 claim, accrued, at the latest, in March 2011 when her parents spoke at the sentencing hearing of R.L.[4]

---

[4]     J.J.'s opposed motion for admission of new evidence, made pursuant to section 909, is denied.  Although this statute permits an appellate court to receive new evidence, the "circumstances under which an appellate court can receive new evidence after judgment, or order the trial court to do so, are very rare.  For this court to take new evidence pursuant to statute (Code Civ. Proc., § 909) . . . , the evidence normally must enable the Court of Appeal to affirm the judgment [or in this case, *order*], not lead to a reversal.  [Citations.]  The power to take evidence in the Court of Appeal is never used where there is conflicting evidence in the record and substantial evidence supports the trial court's findings.  [Citations.]"  (*Philippine Export & Foreign Loan Guarantee Corp. v. Chuidian* (1990) 218 Cal.App.3d 1058, 1090.)  Here, the "new" evidence is a psychiatric/medication evaluation report dated September 29, 2009 done at the Polinsky Children's Center in which J.J. says "someone touch[ed] her in her private parts."  Although J.J. contends she only obtained this "new" evidence in late August 2012, *after* the trial court denied her petition, it is clear this evidence has been available to her since the date of the report and clearly was available in December 2010, when she disclosed the molest to her parents and County social workers, and in March 2011, when her parents appeared and spoke at R.L.'s sentencing.  We thus conclude J.J. has failed to show

15

But that does not end our analysis. J.J. alternatively advances the theories of estoppel and excusable neglect to support her contention that her claim against the County is timely.

C. *Estoppel*

"A public entity may be estopped from asserting the limitations of the tort claims statutes where its agents or employees have prevented or deterred the filing of a timely claim by some affirmative act. The required elements for an equitable estoppel are: (1) the party to be estopped must be apprised of the facts; (2) the party to be estopped must intend his or her conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) the other party must rely upon the conduct to his or her injury. [Citation.]" (*Munoz*, *supra*, 33 Cal.App.4th at p. 1785.)

J.J. contends the County should be estopped from asserting the claims requirement because: (1) she was frightened R.L. would kill her and she did not want to be taken away from her parents again; (2) she was unaware the County was negligent in placing her in the foster home of the family of R.L. until she received the January 2011 report;

_____

exceptional circumstances to warrant our acting as fact finder on evidence that was at all times available to her if she had conducted a reasonable investigation on an issue that was, in any event, thoroughly briefed and considered by the trial court. (See generally *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 808 [recognizing the general rule that "plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation"].) In addition, even if we considered this evidence, we would conclude it does not warrant a reversal of the finding that she did not timely file her claim with the County for placing her, supervising her, and/or preventing sexual abuse in the foster home of R.L. (See §§ 911.2 & 946.6.)

16

and (3) she had not received the records from the Polinsky Children's Center when she filed her petition (see fn. 4, *ante*) and, thus, she did not want to file a "frivolous and unmeritorious lawsuit" against the County.

With respect to R.L., he is not an employee or agent of the County and, thus, his alleged threats of intimidation against J.J. cannot be attributed to the County. In addition, J.J. was in fact removed from the family home of R.L. on September 18, 2009 and disclosed the molestation in December 2010. Given that R.L.'s alleged threat to J.J. did not prevent her from disclosing the sexual abuse to her parents and County social workers, we conclude in any event his threats could not have deterred her from timely presenting a claim which, as we noted, accrued at the latest in March 2011, after R.L. was sentenced for his crime. (See *V.C.*, *supra*, 139 Cal.App.4th at p. 517 [refusing to apply equitable estoppel doctrine because threats made by teacher against minor student did not prevent student from disclosing the sexual abuse to authorities and filing a timely claim and, thus, concluding it could not "find that a 'reasonable' time for [the minor] to present her claim [was] anything other than statutory six-month and one-year time limits specified in Government Code sections 911.2 and 911.4"].)

Regarding the January 2011 report, we conclude it provides no basis for estoppel against the County as a result of when J.J. (through counsel) obtained this report, inasmuch as we already have concluded the report does not have a material bearing on the accrual issue and, in any event, the record shows J.J. first moved to obtain this report—which was always available to her and her guardian ad litem (see *Fox v. Ethicon*

17

*Endo-Surgery, Inc.*, *supra*, 35 Cal.4th at p. 808)—more than six months after her cause of action accrued. (See § 911.2, subd. (a).)

Finally, with regard to the Polinsky Children's Center records and J.J.'s point that she needed these records to determine whether her lawsuit was meritorious, as noted in footnote 4, we decline to admit this "new" evidence that was at all times available to her on an issue that was thoroughly briefed and considered by the trial court. That said, it appears that J.J. fails to distinguish between when her cause of action accrued and the filing of a claim and preserving her rights against a public entity, on the one hand, and determining whether her lawsuit against that public entity, after timely filing a claim, is viable, on the other hand.

This distinction is apparent in section 910, which governs the content of a claim. It provides:

"A claim shall be presented by the claimant or by a person acting on his or her behalf and shall show all of the following: [¶] (a) The name and post office address of the claimant. [¶] (b) The post office address to which the person presenting the claim desires notices to be sent. [¶] (c) The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted. [¶] (d) A general description of the indebtedness, obligation, injury, damage or loss incurred *so far as it may be known at the time of presentation of the claim.* [¶] (e) The name or names of the public employee or employees causing the injury, damage, or loss, *if known*. [¶] (f) The amount claimed if it totals less than ten thousand dollars ($10,000) as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it

18

may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed. If the amount claimed exceeds ten thousand dollars ($10,000), no dollar amount shall be included in the claim. However, it shall indicate whether the claim would be a limited civil case." (Italics added.)

Thus, whether J.J. had all the information she contends she needed to determine whether any potential lawsuit against the County was viable is wholly separate and apart from the issue of when her cause of action accrued and thus when she was required to notify the County of her claim under section 911.2 (or, as in this case, under § 946.6) and provide the information regarding that claim as then known to her.

For these reasons, we decline to apply the principles of equitable estoppel to prevent the County from asserting J.J.'s noncompliance with the various claims statutes.

D. *Excusable Neglect and Minority Status*

J.J. first contends her status as a minor precludes her claim with the County from being untimely, citing to *Hernandez v. County of Los Angeles* (1986) 42 Cal.3d 1020 (*Hernandez*). She alternatively contends her claim should be deemed timely based on excusable neglect. We disagree with both contentions.

First, as noted *ante*, subdivision (c)(1) of section 911.4 expressly provides that in computing the one-year period when, as in the instant case, a claim is not filed within six months of accrual as set forth in subdivision (a) of section 911.2, the "time during which the person who sustained the alleged injury, damage, or loss as a *minor shall be counted*," absent an exception not applicable here. (Italics added; see also Code Civ. Proc., § 352, subd. (b).)

19

Second, *Hernandez* is inapposite here. In focusing on the various policy considerations made by our Legislature in attempting to "reach a reasonable accommodation between the interests of minors who are generally unable to protect themselves and the interests of the affected governmental entity," the *Hernandez* court concluded: "Section 911.4 requires a late-claim application to be filed on behalf of a minor *no more than one year after the accrual of the minor's cause of action*, thereby protecting a governmental entity from having to respond to a claim many years after the accrual of the action. At the same time, sections 911.6 [the grant or denial of an application] and 946.6 ensure a minor that when a late-claim application is filed *within a year of the accrual of his [or her] cause of action*, his [or her] claim will not be barred because of a delay within that year for which the minor himself [or herself] is not responsible." (*Hernandez*, *supra*, 42 Cal.3d at p. 1030, italics added.)

In the instant case, because J.J. did not file her claim with the County within one year of the accrual of her cause of action, neither section 911.4 nor section 946.6 nor *Hernandez* nor other "excusable neglect" cases on which she relies apply to her situation. (See, e.g., *Ebersol v. Cowan*, *supra*, 35 Cal.3d at p. 439 [late claim filed within one year of accrual of cause of action subject to excusable neglect determination]; *Ramariz v. County of Merced* (1987) 194 Cal.App.3d 684, 687 [late claim filed within one year of accrual of cause of action].) We thus conclude J.J. cannot show her claim was timely based on excusable neglect.

20

DISPOSITION

The order of the trial court denying J.J.'s section 946.6 petition is affirmed.  Each party to bear their own costs on appeal.

BENKE, Acting P. J.

WE CONCUR:

McINTYRE, J.

IRION, J.

21