Filed 1/8/16  Medina v. State of California CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| CYNTHIA MEDINA,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>STATE OF CALIFORNIA,<br><br>        Defendant and Respondent. | A141235<br><br>(Napa County<br>Super. Ct. No. 2661393) |

The trial court sustained the State's demurrer to Cynthia Medina's complaint for personal injuries on limitations and worker compensation exclusivity grounds and dismissed her lawsuit.  We affirm.  She did not comply with the jurisdictional, one-year deadline for notifying the government of her claims, and her claims, which arise from her exposure to second-hand smoke while working as a nurse at a veterans home, must be brought through the workers' compensation system, not the courts.

### BACKGROUND

During a span of 20 years, between 1990 and 2010, Medina worked as a nurse at the Yountville Veterans Home of California.  The home was operated by the State of California through the Department of Veterans Affairs.  While employed there, Medina encountered to second-hand smoke for approximately 30 to 45 minutes a day.  Veterans were "deliberately" allowed to smoke anywhere on home premises.  Medina asserts they would "intentionally blow smoke" into her body while she administered medications.

1

On February 28, 2011, Medina was diagnosed with lung cancer and immediately had surgery to remove a portion of her right lung. After the surgery, Medina was in pain, weak, and needed a portable oxygen tank to breath. She was bedridden for some time and thereafter required assistance to stand and walk. Her health slightly improved at the end of 2012.

More than two years after her diagnosis, in March 2013, Medina filed a claim with the State's Victim Compensation and Government Claims Board, giving notice she wished to sue the State for $10 million for causing her cancer. A timely pre-suit claim is generally a prerequisite to a variety of suits against the state. (See Gov. Code, § 945.6.)[1] Recognizing her claim was late, given the six-month deadline set forth in section 911.2, Medina also submitted a letter requesting late consideration, citing section 911.6, which enumerates grounds for such relief from the limitations period.

The board denied Medina's claim. Not only was the claim more than six months late, it was more than one year late, and the board concluded it had no jurisdiction to consider claims filed beyond the one-year mark, a time limitation found in section 911.4.

Medina, invoking section 946.6, then petitioned the superior court for leave to sue the State and the Department despite the delay. When no one opposed the petition, the trial court granted leave to sue.

Medina filed her complaint against both the State and the Department (collectively the State). The State demurred, asserting, despite not having opposed Medina's petition, that her claims were untimely, and also that the workers' compensation system was her exclusive recourse. Medina filed an amended complaint. The State again demurred. And after the trial court sustained the demurrer with leave to amend, Medina filed the operative, second amended complaint.

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

Medina's second amended complaint, which included all the causes of action from her two previous pleadings, alleged battery, assault, premises liability, negligence, and violation of Labor Code section 6404.5, subdivision (d)(12), which addresses employers' obligations regarding workplace smoke exposure.  Each cause of action was grounded on the State allowing patients to smoke in front of Medina.

The State again interposed a demurrer.  The trial court sustained it without leave to amend and dismissed the case, and Medina appealed.

DISCUSSION

"When reviewing a judgment dismissing a complaint after the granting of a demurrer without leave to amend, courts must assume the truth of the complaint's properly pleaded or implied factual allegations. . . .  [W]e determine whether the complaint states facts sufficient to state a cause of action." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 (*Schifando*).)  We do not defer to the trial court on such a question of law; our review is de novo. (*Lewis v. Safeway, Inc.* (2015) 235 Cal.App.4th 385, 390 (*Lewis*).)  As to the trial court's denial of leave to amend, we review that decision for abuse of discretion.  The plaintiff has the burden of demonstrating how amendment could remedy the pleading defect that led to the demurrer being sustained. (*Schifando*, *supra*, 31 Cal.4th at p. 1081; *Lewis*, *supra*, 235 Cal.App.4th at pp. 390, 395–396.)

*Jurisdiction*

A claim against a government entity "relating to a cause of action . . . for injury to person . . . shall be presented" to the Victim Compensation and Government Claims Board "not later than six months after the accrual of the cause of action." (§ 911.2, subd. (a).)  A late claim may be considered upon written application, if presented "within a reasonable time *not to exceed one year* after the accrual of the cause of action." (§ 911.4, subd. (b), italics added.)  For such late claims filed after six months but within a year, the board shall consider the claim's merits if one of several exceptions is met, such as if "the

3

person who sustained the alleged injury, damage or loss was physically or mentally incapacitated during all of the [six months] . . . and by reason of such disability failed to present a claim during such time." (§ 911.6, subd. (b)(3).) But the exceptions provided by section 911.6 do not apply to claims filed after one year. (§ 911.4.)

There are limited means of tolling, or pausing, the one-year period. (§ 911.4, subd. (c).) Thus, if the victim is a minor, the time when the minor is mentally incapacitated and has no guardian does not count toward the year. (§ 911.4, subd. (c)(1).) Nor does time count while a minor victim is a dependent of the juvenile court, under certain circumstances. (§ 911.4, subd. (c)(2) & (3).) None of these tolling provisions are applicable here.

The statute authorizing courts to allow suit after the board denies a late claim filing, section 946.6, asks the superior court to consider the same exceptions set forth in section 911.6 (governing the board's consideration of six-month to one-year claims) and states only that relief shall be granted when the late application fits within one of those exceptions and was "made within a reasonable time not to exceed that specified in subdivision (b) of Section 911.4"—that is, one year. (§§ 946.6, subds. (b)–(c), 911.6, subd. (b), 911.4, subd. (b).) Therefore, section 946.6 allows a superior court to independently review whether a six-month to one-year claim should go forward despite a board denial. It does not authorize relief when claims are over a year late.

In fact, courts hold the one-year outside claim deadline is jurisdictional and cannot be forfeited by litigation conduct. Failure to meet the deadline divests courts of their power to adjudicate a victim's claims. (*J.J. v. County of San Diego* (2014) 223 Cal.App.4th 1214, 1221; *Munoz v. State of California* (1995) 33 Cal.App.4th 1767, 1779 ["Filing a late-claim application within one year after the accrual of a cause of action is a jurisdictional prerequisite to a claim-relief petition. [Citation.] When the underlying application to file a late claim is filed more than one year after the accrual of the cause of action, the court is without jurisdiction to grant relief under Government

4

Code section 946.6."]; *Dixon v. City of Turlock* (1990) 219 Cal.App.3d 907, 913 [under section 911.4, "appellant's claim was time barred and neither the respondent public entity nor the courts had any discretion to waive or otherwise relieve appellant's failure to file a timely claim or application"]; *Santee v. Santa Clara County Office of Education* (1990) 220 Cal.App.3d 702, 713 ["filing a late-claim application within one year is a jurisdictional prerequisite to a claim-relief petition"]; *Greyhound Lines, Inc. v. County of Santa Clara* (1986) 187 Cal.App.3d 480, 488 ["When the underlying application to file a late claim is filed more than one year after accrual of the cause of action, the court is without jurisdiction to grant relief under section 946.6."].)[2]

As Medina presented her claim well over a year after her lung cancer diagnosis, the courts lack jurisdiction to hear her claims, and dismissal was appropriate. This is so even though the government initially failed to oppose her petition for relief under section 946.6. Court rulings in excess of jurisdiction are void and may be challenged at any time, as the parties cannot confer jurisdiction on the courts by consent. (*Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 307, fn. 9; *Airlines Reporting Corp. v. Renda* (2009) 177 Cal.App.4th 14, 20.)

To avoid the one-year deadline, Medina points to her physical incapacity during the claim period. Although Medina amply alleges serious physical disability—she was at times bedridden and required assistance to move about—she does not allege or credibly argue this disability was so severe, for an entire year, so as to preclude her making a claim or having one filed on her behalf. Moreover, while physical disability might

---

[2] There may be limited circumstances under which a public entity is equitably estopped from asserting the one-year deadline because, through threats or deceitful conduct, it deterred a timely filing. (See *Doe v. Bakersfield City School Dist.* (2006) 136 Cal.App.4th 556, 567.) Medina does not invoke this doctrine.

excuse the filing of a claim within six months to one year (§ 911.6, subd. (b)(3)), it does not excuse Medina's filing beyond one-year (§ 911.4).[3]

## Workers Compensation Exclusivity

Even if the one-year deadline were not jurisdictional, or if the State could be said to have forfeited that jurisdictional problem by not opposing Medina's section 946.6 petition, the dismissal was still proper because of workers' compensation exclusivity.

When the workers' compensation system provides a remedy for an employee, it is the sole remedy available. (Lab. Code, §§ 3600, 3602.) "The legal theory supporting this exclusive remedy provision 'is a presumed "compensation bargain," pursuant to which the employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability. The employee is afforded relatively swift and certain payment of benefits to cure or relieve the effects of industrial injury without having to prove fault but, in exchange, gives up the wider range of damages potentially available in tort.' [Citation.]" (*Wilson v. Southern California Edison Co.* (2015) 234 Cal.App.4th 123, 141–142.)

Here, as the parties' briefing suggests, the applicability of the workers' compensation regime hinges on the presence of two conditions: first, whether, "at the time of the injury, the employee [was] performing service growing out of and incidental to his or her employment and [was] acting within the course of his or her employment" (Lab. Code, § 3600, subd. (a)(2)); and second, whether "the injury [was] proximately caused by the employment, either with or without negligence" (*id*. § 3600, subd. (a)(3)).

---

[3] Medina also mistakenly asserts the "delayed discovery" rule applies to toll the one-year period. This rule, which concerns the accrual of causes of action for latent injuries, manifestly does not apply here. (See generally *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807 [discussing rule].) Medina was well aware of her lung cancer and her history of smoke exposure as of the date of her diagnosis, February 28, 2011.

6

There can be little question Medina was performing her job and acting within the course of her employment when administering medications to veterans. Nor can there be any doubt that she claims her injury was caused by being exposed to cigarette smoke while she was on the job.

Medina cites *Johnson v. Industrial Acc. Commission* (1958) 157 Cal.App.2d 838, for the proposition that an illness acquired at work unrelated to that work—polio while chaperoning a contagious child on a field trip—is not an "occupational" injury. That is indeed what *Johnson* holds. But in finding the injury not "occupational," it nonetheless termed the injury "industrial" and acquired "in the course of her employment," and in no way held the injury was not compensable under the workers' compensation regime. (*Id.* at pp. 840–842.) Thus, injuries arising from mold in the workplace (*Jensen v. Amgen Inc.* (2003) 105 Cal.App.4th 1322 (*Jensen*)) and from third-party violence at the workplace (*Spratley v. Winchell Donut House, Inc.* (1987) 188 Cal.App.3d 1408 (*Spratley*)), have been held compensable through workers compensation.

Medina argues she should be able to sue in court because allowing second-hand smoke in the workplace violates public policy and Labor Code safety provisions. She thus characterizes this conduct as a crime of violence, falling outside the compensation bargain. While certain highly offensive, intentional conduct is beyond the compensation bargain, much wrongful conduct, even "serious and willful misconduct" (see Lab. Code, § 4553), falls within it.

The Supreme Court classifies employer-caused injuries under a "tripartite" scheme. (*Fermino v. Fedco, Inc.* (1994) 7 Cal.4th 701, 713 (*Fermino*).) "First, there are injuries caused by employer negligence or without employer fault that are compensated at the normal rate under the workers' compensation system." (*Id.* at pp. 713–714.) "Second, there are injuries caused by ordinary employer conduct that intentionally, knowingly or recklessly harms an employee, for which the employee may be entitled to extra compensation under section 4553." (*Id.* at p. 714.) Labor Code section 4553

7

specifically addresses injuries "by reason of the serious and willful misconduct" of an employer and calls for a 50 percent compensation enhancement.  Third, and finally, "there are certain types of intentional employer conduct which bring the employer beyond the boundaries of the compensation bargain, for which a civil action may be brought."  (*Fermino*, at p. 714.)

When we compare the kinds of serious and willful misconduct held to be compensable under the workers' compensation regime, we can only conclude Medina's exposure to second-hand smoke also falls under that regime.

First, we look to *Johns-Manville Products Corp. v. Superior Court* (1980) 27 Cal.3d 465 (*Johns-Manville*), in which our Supreme Court considered a plaintiff who developed lung cancer after 29 years of asbestos exposure in the defendant's asbestos manufacturing plant.  The defendant had known the exposure was harmful for decades, yet concealed this from the plaintiff, told him the plant was safe, and operated the plant while violating state and federal regulations governing dust levels.  (*Id.* at p. 469.)

The court noted employers are routinely mindful of dangers, yet do not act.  "In many of these cases, the employer does not warn the employee of the risk.  Such conduct may be characterized as intentional or even deceitful.  Yet if an action at law were allowed as a remedy, many cases cognizable under workers' compensation would also be prosecuted outside that system.  The focus of the inquiry in a case involving work-related injury would often be not whether the injury arose out of and in the course of employment, but the state of knowledge of the employer and the employee regarding the dangerous condition which caused the injury.  Such a result would undermine the underlying premise upon which the workers' compensation system is based."  (*Johns-Manville*, *supra*, 27 Cal.3d 474.)  Thus, enhanced compensation under "section 4553 is the sole remedy . . . against an employer whose employee is injured in the first instance as the result of a deliberate failure to assure that the physical environment of the work place is safe."  (*Ibid.*)

8

Accordingly, to the extent plaintiff "alleged only that plaintiff contracted the disease because defendant knew and concealed from him that his health was endangered by asbestos in the work environment, failed to supply adequate protective devices to avoid disease, and violated governmental regulations relating to dust levels at the plant, plaintiff's only remedy would be to prosecute his claim under the workers' compensation law. (*Johns-Manville, supra*, 27 Cal.3d at pp. 474–475.) In contrast, allegations that defendant aggravated plaintiff's cancer by fraudulently and intentionally concealing the asbestos problem when the plaintiff sought help and treatment were of different nature. That alleged conduct, which prevented treatment and induced further exposure, was "distinct from the hazards of employment" and was outside the compensation bargain. (*Id.* at p. 477.)

In *Fermino*, the Supreme Court embraced the reasoning of *Johns-Manville*. It held "false imprisonment is outside the scope of the compensation bargain because it constitutes a crime against the person of the employee." (*Fermino, supra*, 7 Cal.4th at p. 723, fn. 7.) There, the plaintiff had pleaded "she was held against her will by her employer for an appreciable time under threat of force and threat of arrest for an apparently ill-founded reason." (*Id.* at p. 724.)

*Fermino* cautioned, however, that not all "employer crimes" fall outside of the workers' compensation regime. "[W]e do not mean to suggest that regulatory crimes such as violations of health and safety standards or special orders are actions outside the normal course of employment. On the contrary, the Act includes such regulatory crimes within its scope. (See §§ 6423, 4553.1; see also *Johns–Manville, supra*, 27 Cal.3d at pp. 474–475 [workers' compensation the only remedy for injuries resulting from willful failure to comply with government regulations regarding dust levels].) It is an expected part of the compensation bargain that industrial injury will result from an employer's violation of health and safety, environmental and similar regulations. What we hold today, rather, is that those classes of intentional employer crimes against the employee's

9

person by means of violence and coercion, such as those crimes numerated in part 1, title 8 of the Penal Code, violate the employee's reasonable expectations and transgress the limits of the compensation bargain." (*Fermino*, *supra*, 7 Cal.4th at p. 723, fn. 7.)

In the wake of *Johns-Manville* and *Fermino*, the courts have continued to conclude known workplace safety injuries give rise to workers' compensation claims, not private lawsuits, even when those injuries are not directly related to, or a normal part of, the type of work being performed. (*Jensen*, *supra*, 105 Cal.App.4th at pp. 1324–1328 [toxic mold at workplace]; *Spratley*, *supra*, 188 Cal.App.3d at pp. 1410–1411 [known likelihood of violence from neighborhood and failure to change locks on donut shop after break in]; *Gunnell v. Metrocolor Laboratories, Inc.* (2001) 92 Cal.App.4th 710, 716–717, 722–723 [an OSHA-listed hazardous substance which worker was intentionally made to use without proper protection or information] (*Gunnell*); *Davis v. Lockheed Corp.* (1993) 13 Cal.App.4th 519 [workplace asbestos that caused cancer].)

Under the *Johns-Manville* and *Fermino* framework, the State's alleged misconduct—deliberately allowing patients to smoke in Medina's presence—while possibly a regulatory or safety violation, is not criminal behavior involving force or violence that would permit Medina a litigation remedy. (*Johns-Manville*, *supra*, 27 Cal.3d 474; *Fermino*, *supra*, 7 Cal.4th at p. 723, fn. 7; *Gunnell*, *supra*, 92 Cal.App.4th at p. 725; see also *Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund* (2001) 24 Cal.4th 800, 824 [again distinguishing regulatory crimes from crimes of violence and coercion].) An employer causing exposure to a hazardous chemical substance by allowing or insisting on the use of the chemical does not act with violent or physical force. (*Gunnell*, *supra*, 92 Cal.App.4th at p. 725 [even if employer's intentional chemical exposure "caused a 'touching,' " for criminal battery, employer "did not accomplish that touching by using 'physical force' "].) Moreover, Medina alleged *patients* intentionally touched her with their smoke. While the government allegedly allowed this conduct, it was not the primary actor, nor did it allegedly induce patients to smoke at the home, and

10

can hardly be said to have acted with force or violence.  Medina's exposure to patients' smoking while working at the veterans home, though harmful and unsafe, was within the compensation bargain and her claimed injuries therefrom are subject to workers' compensation exclusivity.

### DISPOSITION

The judgment of dismissal is affirmed.

_____
Banke, J.

We concur:


_____
Margulies, Acting P. J.


_____
Dondero, J.