Filed/ 5/23/22  Robinson v. Compton Unified School Dist. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ERIC ROBINSON,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>COMPTON UNIFIED SCHOOL DISTRICT,<br><br>    Defendant and Respondent. | B310764<br><br>(Los Angeles County Super. Ct. No. BC714394) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Christopher K. Lui, Judge. Affirmed.

Law Offices of Pelayes & Yu, Tristan G. Pelayes and Tom Yu for Plaintiff and Appellant.

Olivarez Madruga Lemieux O'Neill, Thomas M. Madruga and Edward B. Kang for Defendant and Respondent.

_____

Eric Robinson, a police officer for the Compton School Police Department, filed two grievances with the Personnel Commission of the Compton Unified School District (the District) after the police chief selected another candidate for promotion to school police sergeant. When he still was not promoted after filing these grievances, Robinson filed a whistleblower lawsuit alleging retaliation in violation of Labor Code section 1102.5 (section 1102.5). That statute prohibits an employer from retaliating against an employee for disclosing information concerning a violation of "state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation . . . ." (§ 1102.5, subd. (b).)

We affirm summary judgment in favor of the District for two independent reasons. First, Robinson's failure to file a government claim prior to filing his lawsuit bars the whistleblower claim before us. Second, taking all inferences in favor of Robinson and interpreting his operative pleading liberally, we conclude the trial court did not err in granting summary judgment of Robinson's whistleblower claim. Assuming arguendo that Robinson alleged he engaged in protected activity when he filed grievances identifying violations of the District's Personnel Commission's Classified Rules and Regulations, the undisputed evidence demonstrates as a matter of law that the protected activity was not a contributing factor to his failure to promote to the sergeant position. To the extent Robinson bases his whistleblower claim on a complaint he made directly to the police chief, he not only has abandoned that claim, but also he failed to support it with evidence. We affirm the judgment in favor of the District.

## BACKGROUND

### 1.    *Events preceding Robinson's lawsuit*

According to Robinson, as of July 2018, he worked for the Compton School Police Department for 21 years. The parties agree that the District has a merit system of employment, i.e., a civil service system covering classified employees including Robinson.[1] Although the parties agree Robinson was a classified employee, they do not further define that term. The parties, however, agree that as a classified employee, Robinson's employment was governed by the District's Personnel Commission's Classified Rules and Regulations (Rules and Regulations).

In May 2018, the District published a job bulletin advertising an opening for a school police sergeant. Robinson applied for the position. On June 14, 2018, Robinson participated in an oral Qualifications Appraisal Interview (QAI) and scored the highest of all applicants. On July 17, 2018, Robinson participated in a second oral interview, which Robinson describes as an improper second QAI but the District describes as an oral departmental selection interview.

According to Robinson's opposition to summary judgment, William Wu, the District's chief of police, and Captain Thomas McFadden participated in this second interview along with a third unidentified individual. According to Robinson, the second

---

[1] We note that in his separate statement in opposition to summary judgment, Robinson, however, asserts that the "civil service commission system . . . is not at issue before this Court in . . . Plaintiff's allegations . . . in his Second Amended Complaint . . . ."

interview should have been a "final certification meeting" with the chief. Robinson believed that the chief should have had a conversation with Robinson to discuss the chief's goals and how Robinson could contribute to those goals. Robinson believed "based on past practices," that the meeting with the chief "was to have been an informal one-on-one Chief's interview" in which the chief would "express the expectations and goals to the soon-to-be-promoted Sergeant." Prior to the second interview, Robinson told Chief Wu that the only permitted QAI had already occurred and that he was first on the eligibility list. Robinson testified in his deposition that the chief was not required to select the person with the highest score but that selecting the person with the highest score was consistent with "past practices." As we explain in our Discussion, on appeal, Robinson no longer contends the District was not permitted to hold a second interview.

In his declaration, Chief Wu described the purpose of the second interview as an opportunity for "the Chief of Police to interview the three highest scoring candidates in the QAI to determine which of the three candidates is the best fit for the position." Chief Wu criticized Robinson's understanding that "the initial QAI interview was the only interview necessary under the Rules and Regulations and that the second oral interview was merely a congratulatory interview to the highest scoring applicant" and explained that Robinson's understanding was "wrong."

It is undisputed that on July 17, 2018, Chief Wu selected another candidate to fill the sergeant position. Robinson so concedes in his appellate briefing: "Chief Wu had already made his decision to promote [another candidate] immediately following the second interview."

4

On July 18, 2018, Robinson filed a complaint with the District's Personnel Commission alleging that the July 17, 2018 interview violated the Rules and Regulations. Robinson quoted rule 40.200.8 (provided in its entirety in the next section), and criticized Chief Wu for asking the same questions during the second interview as posed in the initial interview. Robinson believed this was improper because " 'Wu is not employed by the Personnel Commission and did not possess any testing authority.' "

According to the District, it decided to hold another interview after learning that the department interview included the same questions as the QAI. According to Robinson, this third interview "was not a 'misunderstanding' but rather an intentional act to violate" the Rules and Regulations.

Robinson then participated in a third interview on July 23, 2018. According to Robinson, Captain McFadden also participated in that interview and his participation was unauthorized under rule 40.200.13, quoted below.

Also on July 23, 2018, Robinson amended his prior grievance filed with the District's Personnel Commission. His amended grievance did not repeat the alleged violations of the District's Rules and Regulations. Instead, Robinson alleged discrimination as well as violation of several state statutes unrelated to the current appeal.[2]

---

[2] Specifically, Robinson referenced Education Code sections 45308, 45309, 45298, governing layoffs and reinstatement after a layoff.

## 2. *The pertinent District Rules and Regulations*

As noted above, the District has Rules and Regulations, which Robinson contends either the District violated or he reasonably believed the District violated. Robinson's operative complaint references rule 40.200.8, and on appeal Robinson relies on that rule, as well as rule 40.200.13.

Rule 40.200.8 is entitled "<u>Examination Procedures</u>" and provides:

"A. Classified employees in any written test must take the test on the prescribed date unless in military service during a national emergency declared by the President or during any war in which the United States is engaged.

"B. Copies of the questions in a test shall not be made by competitors or other unauthorized persons.

"C. Where written tests are required, they shall be so managed that none of the test papers will disclose the name of any competitor until all papers of all competitors in a given examination shall have been marked and rated.

"D. Any competitor in any examination who places any identifying mark upon his test papers . . . or makes any attempt to disclose to others the identity of his papers prior to the completion of the examination shall be disqualified.

"E. The Commission may designate examinations for specified classes as continuous examinations. When so designated, the examination shall be administered as applicants are available, and the areas of the service indicate, and applicants shall be accepted every working day. Procedures for review of written tests shall be suspended.

"F.  The proceedings of all oral examinations shall be electronically recorded.  Such tapes shall be retained 90 days following establishment of an eligibility list."

Rule 40.200.13 is entitled "<u>Qualifications Appraisal Interview:  Oral Examination</u>" and provides:

"A.  If an examination includes a Qualifications Appraisal Interview (QAI), The Qualifications Appraisal Interview Board shall consist of at least two members.

"B.  Unless specifically directed to evaluate the candidates' technical knowledge and skills, the oral examination panel shall confine itself to evaluating general fitness for employment in the class.

"C.  When the oral panel is directed to evaluate technical knowledge and skills, at least two members of the panel shall be technically qualified in the specified occupational area.

"D.  A district employee may serve on an oral examination board if she/he is not the first or second level of supervision over a vacant position in the class for which the examination is held. [According to Robinson, Captain McFadden was the second level supervisor over a sergeant.]

"E.  Members of the governing board or Personnel Commission shall not serve on an oral examination board.

"F.  All oral examinations for regular classified positions shall be electronically tape recorded.  In no case will an oral examination panel be provided with confidential references on employees of the District who are competing in promotional examinations.  Scores achieved by the candidates on other parts of the examination shall not be made available to the oral panelists.

"G. A candidate may review the QAI rating within five work-days following the mailing of notification of examination results. The purpose of the review is to counsel a candidate relative to his/her general QAI performance. Test material which has been rented, leased, or obtained under a contract where the terms of such rental or leasing, or contract prohibit such review or inspection, shall not be subject to review or inspection by a candidate.

"H. If a candidate wishes to protest the QAI rating, she/he must submit the written protest to the Personnel Director during the five work-day review period. Such protest shall state specifically the parts of the QAI protested, or wherein errors are alleged to have occurred, citing authorities or references to support such protest, and stating the remedy to which the candidate believes she/he is entitled. The Personnel Director shall review and answer the QAI protests and shall make any necessary corrections. Such corrections shall be applied uniformly to all candidates. Candidates who have protested shall be notified in writing of the disposition of their protests."

"I. If the protest is not sustained, the candidate may appeal to the Personnel Commission within five work days after notice of the decision of the Personnel Director was mailed to the candidate. Such appeal to the Commission shall be in writing and shall be based upon a charge that the rejection constitutes a violation of law, misapplication of the Rules and Regulations of the Classified Service, or that the reasons for rejection are inconsistent with the facts; the facts supporting such a charge shall be clearly set forth in the appeal and shall include the remedy sought by the candidate. Upon this written appeal to the Personnel Commission, a candidate may request to review the

qualifications appraisal interview paperwork and the recording of his/her interview. Such request shall be granted as soon as practicable and the review shall be conducted by a Personnel Commission staff member. The Commission's decision shall be transmitted in[ ] writing to all concerned and shall be final. No eligibility list will be approved by the Personnel Commission, or if the eligibility list has already been approved, no appointments will be made from the eligibility list until the Personnel Commission has ruled on the appeal of the employee."

### 3.    *Robinson's lawsuit*

On July 23, 2018, Robinson filed his original complaint. On September 10, 2018, he filed a first amended complaint. On November 28, 2018, Robinson filed a second amended complaint, the operative pleading. The second amended complaint alleges a single cause of action for violation of section 1102.5.

In the second amended complaint, Robinson alleged that, in early June 2018, he applied for a promotion to police sergeant. On June 14, 2018, Robinson participated in the QAI. Robinson received the highest score of all applicants and was placed on the promotion eligibility list.

Robinson alleged that on July 13, 2018, Chief Wu told plaintiff to " 'study up' for the July 17, 2018 meeting" and Robinson "protested." Robinson told Wu the only permissible QAI already had occurred and Robinson received the highest score.

Robinson alleged that the District improperly held a second QAI on July 17, 2018 which, he alleged "is against the Rules and Regulation[s] of the Personnel Commission. . . . Plaintiff appeared before an unauthorized panel that consisted of: Captain Thomas McFadden, Wu, and an unknown third person.

9

Plaintiff protested the fact that Wu is not employed by the Personnel Commission and did not possess any testing authority. More importantly, Wu should not have been in possession of the questions . . . which Wu used in the [QAI]."

Robinson further alleged: "On July 18, 2018, . . . Plaintiff filed a grievance with the Personnel Commission outlining the specific violations of the [District's] Classified Rules and Regulation[s], under 40.200.8 . . . ." About an hour later, Robinson received an e-mail indicating that the District did not select him as police sergeant.

Robinson also alleged that the District then held another QAI on July 23, 2018 and "Plaintiff filed another grievance with the Personnel Commission, protesting the unauthorized manner in which the [QAI] was conducted." According to Robinson, the third QAI was conducted by "an unauthorized panel that consisted of: Captain Thomas McFadden, Wu, and another unknown third party [who was different from the unknown third party that participated in the prior interview] . . . ." Later that day, plaintiff received an e-mail indicating he was not selected for the position.

According to the second amended complaint, Robinson "engaged in legally protected activities . . . by disclosing to the CUSD [District's] Personnel Commission . . . information which Plaintiff had reasonable cause to believe disclosed violations of the CUSD Classified Rules and Regulations pertaining to the Examination Procedures under 40.200.8. Plaintiff is informed and believes that the reason he was not promoted to Police Sergeant was due to the reporting and protesting of the Police Sergeant examination procedure to Wu and the Personnel Commission as an act of retaliation for Plaintiff's actions . . . ."

10

**4.    *Summary judgment***

The District moved for summary judgment on multiple grounds, including that as a matter of law, Robinson did not engage in protected activity.  The District also argued that Robinson could not establish a causal link between the alleged protected activity and retaliation.

Robinson countered that he engaged in protected activities "when reporting rule violations." (Capitalization & boldface omitted.)  Robinson also argued that he engaged in protected activity when he disclosed reasonably based suspicions of rule violations.  "Plaintiff had a belief that his superior was violating the Rules and Regs. of the [District], a public entity and a law enforcement agency regarding the selection and promotion of an officer to a supervisory position."  Robinson further argued that the close temporal proximity between his protected activity and the alleged retaliatory conduct showed a prima facie case of causation.

The trial court found that Robinson did not engage in a protected activity and relied on that ground to grant summary judgment.

## DISCUSSION

We review the judgment, not the trial court's reasons for the judgment.  (*Scheer v. Regents of University of California* (2022) 76 Cal.App.5th 904, 913.)  In performing our de novo review of the summary judgment, we must review the evidence in the light most favorable to Robinson, the party opposing summary judgment.  (*Ibid.*)  Summary judgment is proper if the record shows no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

11

(*Edgerly v. City of Oakland* (2012) 211 Cal.App.4th 1191, 1205.) A defendant is entitled to summary judgment if the plaintiff cannot establish one of the elements of a cause of action. (*Ibid.*) It is well established that the "materiality of a disputed fact is measured by the pleadings [citations], which 'set the boundaries of the issues to be resolved at summary judgment.' [Citations.]" (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250.)

A. **Robinson's Failure to File His Government Claim Before Filing His Complaint is Fatal to His Whistleblower Cause of Action**

The Government Claims Act (Gov. Code, § 810 et seq.) establishes conditions for filing a lawsuit seeking money damages against a public entity, including whistleblowing claims. (*Willis v. City of Carlsbad* (2020) 48 Cal.App.5th 1104, 1118.) The prior filing of a government claim is an element of a plaintiff's whistleblower cause of action.[3] (*Willis*, at p. 1119.) Robinson filed his complaint on July 23, 2018. He filed his government claim only on August 28, 2018. Robinson acknowledges that he "filed the Complaint on July 23, 2018, which is prior to the presentation of the government claim."

Government Code section 945.4 precludes a "suit for money or damages . . . against a public entity" absent a *prior* presentation of the claim to the public entity. (See Gov. Code, § 945.4; see also *State of California v. Superior Court* (2004) 32 Cal.4th 1234, 1237.) The purpose of this statute is to afford the public entity an opportunity to investigate and settle the

_____

[3] Government Code section 905 sets forth exceptions to this general rule, none of which is relevant here.

12

claim without incurring litigation costs. (*J.J. v. County of San Diego* (2014) 223 Cal.App.4th 1214, 1219.) It is undisputed that Robinson did not file his government claim before filing his original complaint. That failure bars him the whistleblower claim before us. (*Le Mere v. Los Angeles Unified School Dist.* (2019) 35 Cal.App.5th 237, 246–247.)

Robinson argues he substantially complied with the Government Claim Act. He did not. Instead, he filed his lawsuit *before* filing his claim with the District. At oral argument, he mistakenly relies on the filing of his *first* amended complaint on September 10, 2018 in asserting his filing of his government claim on August 28, 2018 was substantial compliance. That argument ignores the impact of failing to file a government claim before bringing suit: " 'Timely claim presentation is not merely a procedural requirement, but is a condition precedent to the claimant's ability to maintain an action against the public entity. [Citation.] "Only after the public entity's board has acted upon or is deemed to have rejected the claim may the injured person bring a lawsuit alleging a cause of action in tort against the public entity." [Citation.]' " (*J.J. v. County of San Diego*, *supra*, 223 Cal.App.4th at p. 1219.) Here, the District had no opportunity to accept or reject Robinson's whistleblowing claim because Robinson filed it only after he initiated his lawsuit. Robinson's reliance on his amended complaint further ignores the fundamental purpose of filing a government claim before initiating a lawsuit—to allow the public entity to evaluate and potentially settle the claim without incurring litigation costs.

In sum, because Robinson did not file a claim with the District prior to seeking redress in the court, his lawsuit is barred.

13

**B.      The Trial Court Did Not Err in Granting Summary Judgment Because Robinson Cannot Establish the Elements of His Whistleblowing Cause of Action**

Section 1102.5 subdivision (b) provides: "An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties."

The purpose of section 1102.5 is to encourage workplace whistleblowers to report unlawful acts without fearing retaliation. (*Lawson v. PPG Architectural Finishes, Inc.* (2022) 12 Cal.5th 703, 709 (*Lawson*).) To demonstrate a claim of retaliation an employee must demonstrate " 'by a preponderance of the evidence' that the employee's protected whistleblowing was a 'contributing factor' to an adverse employment action." (*Lawson*, at p. 712; see also *Scheer v. Regents*, *supra*, 76 Cal.App.5th at p. 914.) "Then, once the employee has made that necessary threshold showing, the employer bears 'the burden of proof to demonstrate by clear and convincing evidence' that the alleged adverse employment action would have occurred 'for legitimate, independent reasons' even if the employee had not

14

engaged in protected whistleblowing activities." (*Lawson*, at p. 712.)

As Robinson contends, *Lawson* recently held that the framework established in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 (*McDonnell Douglas Corp.*), does not apply to a cause of action under section 1102.5.[4] (*Lawson, supra*, 12 Cal.5th at p. 712.) Also, as *Lawson* explains, a plaintiff asserting a cause of action under section 1102.5 is not required to show retaliatory intent, but instead, is required only to show that the retaliation was a contributing factor to the adverse employment decision. (*Lawson*, at pp. 713–714.)

A defendant moving for summary judgment must show either that "one or more elements of the plaintiff's cause of action cannot be established or show there is a complete defense to the plaintiff's cause of action." (*Doe v. Good Samaritan Hospital* (2018) 23 Cal.App.5th 653, 661.) Here, the District demonstrated that Robinson cannot establish essential elements of his whistleblowing cause of action.

## C. Robinson's Grievances Did Not Contribute to the Adverse Employment Action

In his operative pleading, Robinson alleged he engaged in protected activities "by disclosing to the CUSD [District's]

---

[4] Under *McDonnell Douglas Corp.*, "[T]he employee must establish a prima facie case of unlawful discrimination or retaliation. [Citation.] Next, the employer bears the burden of articulating a legitimate reason for taking the challenged adverse employment action. [Citation.] Finally, the burden shifts back to the employee to demonstrate that the employer's proffered legitimate reason is a pretext for discrimination or retaliation." (*Lawson, supra*, 12 Cal.5th at p. 708.)

15

Personnel Commission . . . information which Plaintiff had reasonable cause to believe disclosed violations of the CUSD Classified Rules and Regulations pertaining to the Examination Procedures under 40.200.8.  Plaintiff is informed and believes that the reason he was not promoted to Police Sergeant was due to the reporting and protesting of the Police Sergeant examination procedure to Wu and the Personnel Commission as an act of retaliation for Plaintiff's actions and activities."

On appeal, Robinson argues that the District violated rule 40.200.8 because Chief Wu did not " 'possess any testing authority' " and should not have had the examination questions. Robinson contends that the second and third QAI panels "were unauthorized" specifically because Captain McFadden and the chief should not have been included.  Robinson also argues that he reasonably believed Wu was unauthorized based on his reasonable belief that rule 40.200.8 covers oral examinations. Even though he did not allege it in the operative complaint, Robinson contends on appeal that including Captain McFadden in the second and third interviews violated rule 40.200.13, part D.  In his reply brief on appeal, Robinson, for the first time, cites to several sections of the Education Code, one of which is arguably relevant—section 45273.[5]  Section 45273 governs

---

[5]  Education Code section 45273 provides:

"Examinations shall be administered objectively, and shall consist of test parts that relate to job performance.

"For classes of positions deemed by the commission to require an oral examination, the oral examination board shall include at least two members.  Where a structured objective examination is to be administered to the entire field of candidates, a single member oral examination board may be

16

examination and provides in pertinent part: "A district employee may serve on an oral examination board if he or she is not at the first or second level of supervision over a vacant position in the class for which the examination is held."

utilized. A 'structured objective examination' means, for this purpose, an examination for which the examiner exercises no discretion in the selection of the questions or in the evaluation of the answers.

"Unless specifically directed to evaluate candidates' technical knowledge and skills, the oral examination board shall confine itself to evaluating general fitness for employment in the class. When the oral examination board is directed to evaluate technical knowledge and skills, at least two members of the board shall be technically qualified in the specified occupational area. Members of the governing board or personnel commission shall not serve on an oral examination board. A district employee may serve on an oral examination board if he or she is not at the first or second level of supervision over a vacant position in the class for which the examination is held.

"The personnel commission shall provide for the proceedings of all oral examinations to be electronically recorded. In no case will an oral examination board be provided with confidential references on employees of the district who are competing in promotional examinations. Scores achieved by the candidate on other parts of the examination shall not be made available to the oral examination board."

Robinson also cites to Education Code section 45274, which governs the retention and availability of examination records and is not relevant to this case. He cites to Education Code sections 45240 (permitting a school district to appoint a personnel commission) 45260 (permitting a commission to prescribe rules) and 45261 (describing the subject of rules), but does not argue that the District violated any of those provisions.

17

Even though Robinson improperly raises new issues in his opening and reply briefs, we assume (for purposes of this appeal only) that Robinson made these allegations in his operative complaint.[6]

As set forth above, our Supreme Court in *Lawson* described an employee's burden in a section 1102.5 retaliation claim: To demonstrate a claim of retaliation an employee must demonstrate " 'by a preponderance of the evidence' that the employee's protected whistleblowing was a 'contributing factor' to an adverse employment action." (*Lawson*, *supra*, 12 Cal.5th at p. 712.) Here, *no* evidence supports the inference that Robinson's protected whistleblowing (whether reporting actual or perceived violations) was a contributing factor to an adverse employment action.

It is undisputed Chief Wu selected another person as sergeant on July 17, 2018. In his opening brief, Robinson asserts, "Chief Wu had already made his decision to promote [another

---

[6] It is well established that the "pleadings play a key role in a summary judgment motion. ' "The function of the pleadings in a motion for summary judgment is to delimit the scope of the issues . . . " ' and to frame 'the outer measure of materiality in a summary judgment proceeding.' [Citation.]" (*Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493.) Moreover, Robinson cannot raise the issue for the first time in his reply brief. (*Nordstrom Com. Cases* (2010) 186 Cal.App.4th 576, 583.) Robinson also mischaracterizes the record. In his separate statement opposing summary judgment, Robinson stated that the state statutes were *not* relevant to this case, the exact opposite of the argument in his reply brief. Specifically, in opposition to summary judgment, Robinson claimed that Education Code section 45240 et seq. is "not at issue before this Court . . . ."

18

candidate] immediately following the second interview."**7**  The
second interview took place July 17, 2018.  Robinson filed a
grievance on July 18, 2018 and an amended grievance on July 23,
2018, the claimed protected whistleblowing activity.  The
challenged adverse employment action occurred *before* Robinson's
alleged whistleblowing activity.  This is not a case in which
Robinson's whistleblowing activity was a contributing factor to
his failure to promote—the adverse employment decision.
Instead, Robinson blew the whistle *because* the District did not
promote him.  Accordingly, the trial court did not err in granting
summary judgment in favor of the District.

## D.     Robinson's Discussion With Wu Was Not Protected Conduct

Prior to Chief Wu's selection of another candidate as
sergeant, Robinson told Chief Wu that the only permitted QAI
had already occurred and he was first on the eligibility list.  In
his second amended complaint, Robinson included "protesting of
the Police Sergeant examination procedure to Wu" as a basis for
his section 1102.5 cause of action.

We disagree that this "protest" rescues Robinson's
whistleblower claim.  First, Robinson abandoned the contention
on appeal, and, second, it fails on its merits.  On appeal, Robinson

---

**7**  At oral argument, Robinson appears to have retreated
from this representation in his appellate briefing.  We
nevertheless rely on his appellate briefs, which are " 'reliable
indications of a party's position on the facts as well as the law,
and a reviewing court may make use of statements therein as
admissions against the party.  [Citations.]'  [Citations.]"
(*Artal v. Allen* (2003) 111 Cal.App.4th 273, 275, fn.2.)

19

concedes that his challenge to "the second round of interviews" was "not correct." Robinson now acknowledges that "a second job-performance interview is required." Robinson's concession on appeal that he erred in complaining to Chief Wu that only one QAI was permissible is thus fatal to his whistleblowing claim based on that complaint.

Even if Robinson did not abandon this challenge, it is not well-founded. Robinson does not allege he disclosed to Chief Wu in advance of the second interview any real or perceived "violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation . . . ." (§ 1102.5, subd. (b).) Robinson's alleged protest to Chief Wu identified *no* specific rule, regulation, or statute that was violated. Further, Robinson cites *no* evidence to support the conclusion that he had "reasonable cause to believe that the information [provided to Wu] discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation . . . ." (*Ibid.*) Additionally, in his deposition, Robinson admitted that the chief was not required to select the candidate with the highest score in the QAI, the ultimate basis for Robinson's complaint to the chief prior to Robinson's second interview. In short, interpreting the evidence in the light most favorable to Robinson, he identifies no evidence supporting the inference that his statements to Chief Wu prior to the second interview constituted protected conduct under section 1102.5. (See *Carter v. Escondido Union High School Dist.* (2007) 148 Cal.App.4th 922, 933 [disclosing that coach had recommended a protein shake to a student was not protected activity because it did not disclose a violation of state or federal statute or regulation].)

20

## DISPOSITION

The judgment is affirmed.  The Compton Unified School District shall have its costs on appeal.

NOT TO BE PUBLISHED.


BENDIX, J.

We concur:


ROTHSCHILD, P. J.


MORI, J.*

---

\* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.