Filed 10/2/23  Tyler v. Department of General Services CA3

# NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| JACK L. TYLER, JR., | C096040 |
| Plaintiff and Appellant, | (Super. Ct. No. 34302100312461CUPTGDS) |
| v. | |
| DEPARTMENT OF GENERAL SERVICES et al., | ORDER MODIFYING OPINION AND DENYING REHEARING |
| Defendants and Respondents. | [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on September 11, 2023, be modified as follows:

1. In the first full paragraph in the fourth line on page 3 that begins with "Five days later," delete and replace with "On May 19, 2020."

There is no change in the judgment.  Appellant's petition for rehearing is denied.

1

BY THE COURT:


     /s/
DUARTE, Acting P. J.


     /s/
RENNER J.


     /s/
HORST, J.*

---

\* Judge of the Placer County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 9/11/23  Tyler v. Department of General Services CA3 (unmodified opinion)

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| JACK L. TYLER, JR.,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>DEPARTMENT OF GENERAL SERVICES et al.,<br><br>    Defendants and Respondents. | C096040<br><br>(Super. Ct. No. 34302100312461CUPTGDS) |

Appellant Jack L. Tyler, Jr. appeals from an order denying his petition for relief from the claim presentation requirements of the Government Claims Act (Gov. Code, § 810, et seq.).[1]  We affirm.

As we explain in greater detail later in this opinion, during the COVID-19 pandemic, Governor Gavin Newsom issued two emergency executive orders that, among

---

[1]  Undesignated statutory references are to the Government Code.

1

other things, extended "[t]he time for presenting a claim pursuant to . . . section 911, et seq." by a total of 120 days. Tyler's government claim was not presented to the Department of General Services (DGS) until more than one year after the accrual of his cause of action, well after the six-month statutory period set forth in section 911.2, subdivision (a), even with the additional 120 days added by the Governor's executive orders. Because of this, Tyler also submitted an application for leave to present a late claim pursuant to section 911.4. However, this application was also untimely because section 911.4, subdivision (b) establishes a jurisdictional time limitation of one year after the accrual of a cause of action. (*Munoz v. State of California* (1995) 33 Cal.App.4th 1767, 1779 (*Munoz*).) DGS informed Tyler that it had "no jurisdiction to consider the claim." Tyler filed a petition in the trial court for relief from these requirements under section 946.6. The trial court denied the petition.

On appeal, Tyler contends the Governor's executive orders extending the time for presenting a claim by 120 days also extended the time for applying for leave to present a late claim, and therefore, his application was timely and should have been considered and granted by DGS. However, in *Coble v. Ventura County Health Care Agency* (2021) 73 Cal.App.5th 417 (*Coble*), our colleagues at the Second Appellate District squarely rejected this argument. (*Id*. at p. 421.) Tyler argues "*Coble* was wrongly decided." We disagree. As we explain, *Coble*'s reasoning and conclusion are sound. Because Tyler's application for leave to present a late claim was submitted outside the jurisdictional one-year time limitation of section 911.4, subdivision (b), DGS could not consider the application, and the trial court was likewise "without jurisdiction to grant relief under . . . section 946.6." (*Munoz*, *supra*, 33 Cal.App.4th at p. 1779.)

BACKGROUND

Tyler was involved in a motor vehicle collision on January 27, 2020. On March 4, 2020, Governor Newsom declared a state of emergency due to the outbreak of COVID-

2

19. On March 19, the Governor issued a statewide shelter-in-place order, prompting the law firm to reduce staffing and shift some employees to a work-from-home schedule.

The Governor also issued Executive Order No. N-35-20 on March 21, 2020. Paragraph 11 of this order provides: "The time for presenting a claim pursuant to . . . section 911, et seq., is hereby extended by 60 days. The time within which [DGS] may act upon such claim is extended by 60 days." Five days later, the Governor issued Executive Order No. N-65-20, extending "[t]he timeframe set forth in Executive Order N-35-20, Paragraph 11" by "an additional 60 days." Thus, these executive orders extended "[t]he time for presenting a claim pursuant to . . . section 911, et seq." by a total of 120 days.

On May 14, 2020, Tyler retained the law firm of Del Rio & Caraway, P.C. (the law firm) to represent him in pursuing a personal injury lawsuit related to this collision. On May 22, 2020, the law firm sought a copy of the traffic collision report for Tyler's collision from the California Highway Patrol. This report was received in August 2020. The law firm was still operating on a reduced-staffing basis during this time period.

The law firm returned to full staffing in January 2021, after Sacramento County's stay-at-home order was lifted. It was not until then that the traffic collision report was "fully assessed." At that point, the law firm determined that the other vehicle involved in the collision "was apparently owned by a government entity," the California Department of Corrections and Rehabilitation (CDCR). Because the six-month statutory period for presenting a claim to DGS provided in section 911.2, subdivision (a), had already expired, even with the Governor's 120-day extension, the law firm "determined that leave to present a late claim should be made" pursuant to section 911.4.

On February 17, 2021, more than a year after the motor vehicle collision, the law firm submitted an application for leave to present a late claim to DGS. Attached to the application was a proposed claim form. However, when the law firm discovered that it

3

inadvertently failed to submit the $25 processing fee, it resubmitted the application for leave to present the late claim, as well as the proposed claim form, on February 26.

On July 29, 2021, DGS responded to the application for leave to present the late claim, explaining that it had "no jurisdiction to consider the claim" because "[t]he claim was presented more than one year beyond the date the damages accrued," i.e., the date of the collision.

In December 2021, Tyler filed a petition in the Sacramento County Superior Court seeking "an order relieving him of the requirements of [section] 945.5 and granting him leave to file an action" against DGS and CDCR, in addition to the driver of the other vehicle involved in the collision.

Tyler's briefing in support of the petition argued Executive Order No. N-35-20 and Executive Order No. N-65-20 extended not only the six-month time period for presenting a claim set forth in section 911.2, subdivision (a), but also the one-year time period for submitting an application for leave to present a late claim set forth in section 911.4, subdivision (b). Under this reading of the executive orders, the deadline for submitting the late-claim application in this case was May 27, 2021, and the application was therefore timely. Tyler argued such an interpretation is required to prevent "inequitable and legally inconsistent outcomes." This is so, according to Tyler, because extending the six-month presentation period, as well as DGS's 45-day response period (see § 912.4, subd. (a)), by 120 days results in almost 10 months for a claimant to present the claim and over five months for DGS to respond. Tyler argued that a hypothetical "incorrectly filed" claim presented near the end of the extended presentation period, and denied by DGS near the end of the extended response period, would be denied well after the one-year unextended time period for submitting an application to present a late claim. Thus, Tyler argued, unless the one-year period was also extended, DGS "would be allowed to delay rejection and 'run out the clock' on incorrectly filed claims, preventing

4

claimants from exercising their right under section 911.4 to ask for leave to file a late claim."

Finally, Tyler argued he satisfied section 946.6's procedural requirements and was entitled to be relieved from the claim filing requirements of section 945.4 because the failure to present the claim within the time period specified in section 911.2 was due to excusable neglect and granting him the requested relief would not result in prejudice to DGS's ability to defend against the claim.

The day after Tyler filed the above-described brief, *Coble* was decided by the Second Appellate District. We discuss *Coble* later in this opinion. For now, we simply note that the appellate court held the Governor's extension applied "only to the six-month period for presenting a timely claim," and not the one-year period for applying for leave to present a late claim. (*Coble*, *supra*, 73 Cal.App.5th at p. 421.)

Relying primarily on *Coble*, DGS argued in its opposition brief that Tyler's application for leave to present a late claim was untimely and his failure to file the late-claim application within the one-year time period deprived the trial court of jurisdiction to grant him relief under section 946.6.

A hearing on the petition was held on January 20, 2022. After hearing argument from both sides, the trial court took the matter under submission and denied the petition the following day.

## DISCUSSION

Tyler asserts the Governor's executive orders must be interpreted to extend not only the six-month time period for presenting a timely claim but also the one-year time period for applying for leave to present a late claim. Such an interpretation, Tyler argues, promotes the purpose of the executive orders, specifically, "mitigating the effects of the pandemic" by extending various deadlines. According to Tyler, the *Coble* court did not interpret the orders in light of this purpose because the court erroneously concluded the phrase "time for presenting a claim pursuant to . . . section 911, et seq." clearly and

5

unambiguously extended only the time for presenting a timely claim pursuant to section 911.2. We conclude the *Coble* court's interpretation of the executive orders is the correct one.

## A.  *Claim Presentation Requirements and Standard of Review*

Before we discuss the *Coble* court's interpretation of the two executive orders at issue in this appeal, we first provide an overview of the Government Claims Act's claim presentation requirements and set forth the applicable standard of review.

The Government Claims Act "requires that any civil complaint for money or damages first be presented to and rejected by the pertinent public entity [citations]." (*Munoz, supra*, 33 Cal.App.4th at p. 1776.) Under section 945.4, the failure to present a timely claim bars a plaintiff from bringing suit against that entity. (*J.J. v. County of San Diego* (2014) 223 Cal.App.4th 1214, 1219; *Munoz*, at p. 1777 ["presentation of a timely claim is a condition precedent to the commencement of suit against the public entity"].)

"The claim presentation requirement serves several purposes:  (1) it gives the public entity prompt notice of a claim so it can investigate the strengths and weaknesses of the claim while the evidence is still fresh and the witnesses are available; (2) it affords opportunity for amicable adjustment, thereby avoiding expenditure of public funds in needless litigation; and (3) it informs the public entity of potential liability so it can better prepare for the upcoming fiscal year." (*Munoz, supra*, 33 Cal.App.4th at p. 1776.) Moreover, "[t]he intent of the [Government Claims Act] is not to expand the rights of plaintiffs against governmental entities," but rather "to confine potential governmental liability to rigidly delineated circumstances." (*Ibid*.)

Section 911.2 provides, in relevant part, that all claims "relating to a cause of action . . . for injury to person . . . shall be presented . . . not later than six months after the accrual of the cause of action." (§ 911.2, subd. (a).) However, where such a claim is not presented within this six-month time period, section 911.4 provides that "a written application may be made to the public entity for leave to present that claim." (§ 911.4,

subd. (a).)  This late-claim application "shall be presented to the public entity . . . within a reasonable time *not to exceed one year after the accrual of the cause of action* and shall state the reason for the delay in presenting the claim.  The *proposed claim* shall be attached to the application."  (§ 911.4, subd. (b), italics added.)

Under section 911.6, after receiving such an application, the public entity must "grant or deny the application within 45 days after it is presented" unless that time period is extended by agreement between the parties.  (§ 911.6, subd. (a).)  "If [the public entity] fails or refuses to act on an application within the time prescribed by this section, the application shall be deemed to have been denied on the 45th day," or if extended by agreement, "the last day of the period specified in the agreement."  (§ 911.6, subd. (c).)

Section 946.6 provides that where "an application for leave to present a claim is denied or deemed to be denied . . . a petition may be made to the court for an order relieving the petitioner from [s]ection 945.4."  (§ 946.6, subd. (a).)  Under section 946.6, subdivision (c), "[t]he court must grant the petition . . . if the claimant demonstrates by a preponderance of the evidence the [late-claim] application to the public entity . . . was made within a reasonable time *not exceeding one year after the accrual of the cause of action*, and one of the other four requirements listed in . . . section 946.6, subdivision (c) is met."  (*Munoz*, *supra*, 33 Cal.App.4th at p. 1777, italics added.)  As relevant here, one of the other requirements is the following:  "The failure to present the claim was through mistake, inadvertence, surprise, or excusable neglect unless the public entity establishes that it would be prejudiced in the defense of the claim if the court relieves the petitioner from the requirements of [s]ection 945.4."  (§ 946.6, subd. (c)(1).)

On appeal, we review the trial court's denial of a petition for relief under section 946.6 for abuse of discretion.  (*Munoz*, *supra*, 33 Cal.App.4th at p. 1778.)  However, while "section 946.6 is a remedial statute intended to provide relief from technical rules which otherwise provide a trap for the unwary," and therefore, "a *denial* of such relief by the trial court is examined more rigorously than where relief is granted and any doubts

7

which may exist should be resolved in favor of the application" (*ibid*.), there can be no abuse of discretion in denying a petition for relief under section 946.6 where the late-claim application was made to the public entity outside of the one-year time period set forth in sections 911.4 and 946.6. This is because making "a late-claim application within one year after the accrual of a cause of action is a jurisdictional prerequisite to a claim-relief petition. [Citation.] When the underlying application to [present] a late claim is [made] more than one year after the accrual of the cause of action, the court is without jurisdiction to grant relief under . . . section 946.6." (*Id*. at p. 1779; *Santee v. Santa Clara County Office of Education* (1990) 220 Cal.App.3d 702, 713 [making "a late-claim application within one year is a jurisdictional prerequisite"].)

We finally note that the dispositive issue raised in this appeal, whether the Governor's executive orders extended the one-year jurisdictional time period for making a late-claim application under section 911.4, subdivision (b), presents a question of law subject to our independent review. (*Coble*, *supra*, 73 Cal.App.5th at p. 425; *City of Morgan Hill v. Bay Area Air Quality Management Dist.* (2004) 118 Cal.App.4th 861, 877 (*Morgan Hill*).)

With these legal principles in mind, we now turn to *Coble*. As we explain immediately below, *Coble* correctly held the Governor's extension of time applies only to the six-month period for presenting a timely claim pursuant to section 911.2, subdivision (a).

**B.** *The Governor's Extension of Time Applies Only to the Six-Month Period for Presenting a Timely Claim*

As stated previously, paragraph 11 of Executive Order No. N-35-20 provides: "The time for presenting a claim pursuant to . . . section 911, et seq., is hereby extended by 60 days. The time within which [DGS] may act upon such claim is extended by 60 days." Executive Order No. N-65-20 extended "the timeframe set forth in Executive Order N-35-20, Paragraph 11" by "an additional 60 days." Thus, these executive orders

8

extended "[t]he time for presenting a claim pursuant to . . . section 911, et seq." by a total of 120 days.

" 'The construction of an executive order presents an issue akin to an issue of statutory interpretation—one that presumably presents a question of law for our independent review on appeal. [Citations.] . . . [W]e read the words of the executive order to determine its purpose. We seek to interpret it in a manner that promotes wise policy, not absurdity. We avoid an interpretation that would render terms surplusage, but seek to give every word some significance, leaving no part useless or devoid of meaning.' [Citations.] A fundamental principle of statutory construction is that, '[i]f there is no ambiguity in the language of the statute, "then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." [Citation.] "Where the statute is clear, courts will not 'interpret away clear language in favor of an ambiguity that does not exist.' . . ." ' [Citations.]" (*Coble*, *supra*, 73 Cal.App.5th at pp. 425-426; see also *Morgan Hill*, *supra*, 118 Cal.App.4th at p. 877; *Lennane v. Franchise Tax Bd.* (1994) 9 Cal.4th 263, 268.)

In *Coble*, as here, the appellant failed to timely present a claim to the pertinent public entity within the six-month time period of section 911.2, subdivision (a), and also failed to timely apply for leave to present a late claim within the one-year jurisdictional time period of section 911.4, subdivision (b). (*Coble*, *supra*, 73 Cal.App.5th at p. 420.) There, as here, the appellant argued the trial court erred in denying her petition for relief from the claim presentation requirements because Executive Order No. N-35-20 extended not only the time period for presenting a timely claim, but also the time period for applying for leave to present a late claim. (*Id*. at p. 421.) Our colleagues at the Second Appellate District disagreed, stating: "The plain meaning of the unambiguous executive order requires us to hold that the extension applies only to the six-month period for presenting a timely claim. Because appellant did not timely apply for leave to present a

9

late claim within the unextended one-year statutory period, the trial court did not err by denying her petition for relief." (*Ibid*.)

The *Coble* court first explained that there was "no ambiguity in the relevant portion of Executive Order N-35-20. The 60-day extension applies to '[t]he time for presenting a *claim* pursuant to Government Code section 911, et seq.' [Citation.] It does not apply to the time for presenting an 'application' to a public entity 'for leave to present [a late] claim.' [Citation.]" (*Coble*, *supra*, 73 Cal.App.5th at p. 426.) Viewing the executive order in the context of the statutory scheme, the court also explained that the Government Claims Act "clearly distinguishes between a 'claim' and an 'application.' The terms are not synonymous." (*Ibid*.) After highlighting the provisions distinguishing the presentation of a timely claim from the making of an application for leave to present a late claim, the court stated: "Had the Governor intended to extend not only the six-month statutory period for presenting a timely claim but also the one-year statutory period for filing an application for leave to present a late claim, he would have said so in Executive Order No. N-35-20. The order would have provided, 'The time for presenting a claim *or application for leave to present a late claim* pursuant to Government Code section 911, et seq., is hereby extended by 60 days.' . . . [¶] We cannot redraft the executive order to include the omitted language, '*or application for leave to present a late claim.*' ' "[I]nsert[ing]" additional language into a statute "violate[s] the cardinal rule of statutory construction that courts must not add provisions to statutes. [Citations.] This rule has been codified in California as [Code of Civil Procedure] section 1858, which provides that a court must not 'insert what has been omitted' from a statute." ' [Citations.] Moreover, '[u]nder governing principles of statutory construction, "the expression of one thing in a statute ordinarily implies the exclusion of other things. [Citation.]" [Citation.] Thus, the [executive order's] express inclusion only of [an extension of time for presenting a claim] implies the [Governor's] intent to exclude [an extension of time for applying for leave to present a late claim].' [Citation.]" (*Id*. at pp. 426-427.)

Having concluded the executive order unambiguously applied only to the six-month time period for presenting a timely claim, the court further explained that it could give the order a different construction only if this literal interpretation would yield an absurd result. (*Coble*, *supra*, 73 Cal.App.5th at p. 427.) The court concluded: "There is nothing absurd in construing Executive Order No. N-35-20 as not extending the time for applying for leave to present a late claim. Reasonable grounds support treating the six-month statutory period for presenting a claim differently from the one-year period for applying for leave to present a late claim. As previously discussed, the one-year period is jurisdictional. [Citations.] Thus, the effect of missing the one-year deadline is to put the claimant out of court. No remedy is available. In contrast, the six-month statutory period for presenting a claim is not jurisdictional. Pursuant to section 911.4, the claimant may apply for leave to present a late claim provided that the application is filed within the one-year statute of limitations of section 911.4, subdivision (b)." (*Ibid.*)

We agree with this analysis in its entirety. Nor do Tyler's arguments on appeal convince us that *Coble* was wrongly decided.

Tyler argues "the phrase '[t]he time for presenting a claim pursuant to . . . section 911, et seq.' is not a model of clarity . . . because the only statute in the scheme that provides a time for 'presenting' a 'claim' is section 911.2." Because paragraph 11 of Executive Order No. N-35-20 says " '[t]he time for presenting a claim pursuant to . . . section 911, et seq.' " rather than " '[t]he time for presenting a claim pursuant to . . . section 911.2,' " and " 'et seq.' has no clear terminus," Tyler argues the paragraph "plausibly could be read *not* to limit the extension to the six-month period in section 911.2 but also to extend the one-year period to present proposed claims and applications pursuant to section 911.4." (Boldface omitted.) Tyler claims: "This 'grammatically plausible reading of the language at issue' demonstrates that the scope of the extension in paragraph 11 is ambiguous." We are not persuaded.

11

Tyler reads too much into "et seq."  The operative language of paragraph 11 of Executive Order No. N-35-20 is "time for presenting a claim."  It is the "time for presenting a claim" that is extended 60 days by Executive Order No. N-35-20, and again by Executive Order No. N-65-20.  As Tyler himself acknowledges, the time for presenting a claim is set forth in section 911.2.  While section 911.4 also follows section 911, and therefore is generally part of "section 911, et seq.," (see Jessen, Cal. Style Manual (4th ed. 2000) § 2:8, p. 52 ["et seq." means "and following"]), that section does not set forth the time for presenting a claim.  It sets forth the time for making an application for leave to present a late claim.  (§ 911.4.)  No "claim" is "presented" in an application for leave to present a late claim.  Instead, a "proposed claim" is "attached to the application."  (§ 911.4, subd. (b).)  This proposed claim is "deemed to have been presented," not on the date of the application, but on "the day that leave to present the claim is granted."  (§ 912.2.)  Thus, if the late-claim application is denied, or "deemed to have been denied" by failure or refusal of the public entity to act on the application within the specified time period (see § 911.6, subd. (c)), no claim has been presented.  And where, as here, the late-claim application is submitted outside the one-year jurisdictional cutoff, the public entity is without jurisdiction to grant the application.  (See *Munoz*, *supra*, 33 Cal.App.4th at p. 1779; *Santee v. Santa Clara County Office of Education*, *supra*, 220 Cal.App.3d at p. 713.)  Simply put, under no plausible reading of section 911.4, or the operative language of paragraph 11 of Executive Order No. N-35-20, can the "time for presenting a claim" be read to include the time for applying for leave to present a late claim.

Nevertheless, Tyler argues that DGS's response to his late-claim application confirms the ambiguous scope of the extension of time contained in Executive Order No. N-35-20.  This is so, according to Tyler, because paragraph 11 of this executive order extends not only the time for presenting a claim, but also the time within which DGS may act upon such a claim by the same amount of time.  Tyler argues "[t]he reciprocal nature

12

of the extension conferred means [DGS] had another 60 days to respond to [his] application and proposed claim *only if* Tyler also had another 60 days to present his application." (Boldface omitted.) If not, then DGS had only 45 days to act upon the late-claim application (see § 911.6, subd. (a)), and the failure to do so within that time period amounted to the application being deemed denied on the 45th day (see § 911.6, subd. (c)), i.e., in April 2021. However, DGS responded to the application in July 2021, stating "that [DGS] 'received *the claim you presented* on 02/26/2021,' and the entity 'has no jurisdiction to consider *the claim*' because '*[t]he claim was presented* more than one year beyond the date the damages accrued.' " (Boldface omitted.) According to Tyler, the timing of the response indicates that DGS believed it had additional time to respond, and the language of the response indicates that DGS viewed Tyler's late-claim application as having presented a claim.

Having concluded that paragraph 11 of Executive Order No. N-35-20 did not extend the time for applying for leave to present a late claim, we agree with Tyler's assessment that DGS did not have additional time to act upon the application. Therefore, the application was deemed denied before DGS officially responded to the application. We do not, however, view the fact that DGS responded to the application outside the 45-day time period as confirmation that the executive order is ambiguous. For reasons already expressed, it is not. Nor are we persuaded by the fact that DGS's late response used imprecise language suggesting that Tyler's late-claim application presented a claim. As we have already explained, late-claim applications do not present claims. They attach a proposed claim that is deemed presented only if the application is granted. Thus, Tyler did not present a claim in February 2021. Instead, he applied for leave to present a late claim, attaching a proposed claim to the application, and because this application was deemed denied 45 days later, no claim was ever presented.

Tyler further argues "[e]ven when the language of an executive order is clear, an executive order issued under the Emergency Services Act to address a state of emergency

13

cannot be construed separate from the emergency that necessitated the executive action." The state of emergency prompting the Governor to issue the executive orders at issue in this appeal was the COVID-19 pandemic. As Tyler accurately observes, Executive Order No. N-35-20 states the Governor's finding that " 'strict compliance with various statutes, regulations, and certain local ordinances specified or referenced herein would prevent, hinder, or delay appropriate actions to prevent and mitigate the effects of the COVID-19 pandemic.' " According to Tyler, in order to "best promote[] the Executive Order's purpose," i.e., "mitigating the effects of the pandemic," we must construe the phrase " 'presenting a claim pursuant to . . . section 911, et seq.' as including the presentation of a proposed claim and application under section 911.4 . . . ."

In support of this argument, Tyler relies primarily on *Morgan Hill*, *supra*, 118 Cal.App.4th 861. Such reliance is misplaced. There, the appellate court interpreted an executive order, issued during California's electricity shortage in 2001, that required local, regional, and state agencies making decisions on power plant proposals under the California Environmental Quality Act (CEQA) to use a final staff assessment (FSA) prepared by the California Energy Resources Conservation and Development Commission (Commission) in the same manner as it would use an environmental impact report (EIR) prepared by a lead agency. (*Id*. at pp. 867, 876.) The Bay Area Air Quality Management District did so when it issued a challenged permit, as did the Commission, acting as lead agency, when it certified the project. (*Id*. at pp. 867-868.) The City of Morgan Hill (City) opposed approval of the project and argued on appeal that the FSA "was not an adequate functional equivalent of an EIR, citing CEQA statutes and statewide CEQA guidelines in support of this claim." (*Id*. at p. 876.) The appellate court concluded any inconsistent statutes and guidelines "were effectively repealed" by the Governor's executive order. (*Id*. at p. 877.) The City also urged an interpretation of the executive order that would allow agencies to use the Commission's FSA "only if other criteria set forth in the statewide CEQA guidelines were also met." (*Ibid*.) The court

14

rejected this interpretation, explaining: "To adopt the City's interpretation of the executive order would be absurd, rendering the order a virtual nullity. The purpose of this order was to alleviate a growing electricity shortage that threatened California's residents and commercial users of energy. The order was intended to expedite the processing of applications for power plants by ensuring that the necessary environmental review of such proposals would be completed more quickly. It designated the FSA . . . as the functional equivalent of an EIR for power plant proposal applications for all state and regional agencies. The City's interpretation would countermand the executive order, rather than uphold it. The language of the order is clear and we will follow its plain meaning." (*Id*. at p. 878.)

*Tyler* asserts that "*Morgan Hill* requires the Court to construe an executive order consistent with its purpose, even when the language is not ambiguous," suggesting that an interpretation that better fulfills the purpose of the order must prevail over unambiguous language to the contrary. Not so. *Morgan Hill* simply holds that clear and unambiguous language in an executive order issued during an emergency prevails over inconsistent statutes and guidelines. Here, as we have explained, and as the *Coble* court correctly concluded, Executive Order No. N-35-20 clearly and unambiguously applies only to the six-month time period for presenting a timely claim. To be sure, were we to hold that it also applies to the one-year jurisdictional time period for applying for leave to present a late claim, this would provide litigants with a greater ability to present claims. But the stated purpose of the order does not indicate an intent to provide relief from all deadlines. Instead, it states an intent to provide relief from "strict compliance with various statutes, regulations, and certain local ordinances *specified or referenced herein*." (Italics added.) The deadline clearly and unambiguously specified in paragraph 11 of Executive Order No. N-35-20 is the six-month time period for presenting a claim, not the one-year jurisdictional time period for applying for leave to present a late claim. " ' "Where the [executive order] is clear, courts will not 'interpret away clear language in

15

favor of an ambiguity that does not exist.' . . ." ' [Citations.]" (*Coble*, *supra*, 73 Cal.App.5th at p. 426.)

## DISPOSITION

The judgment is affirmed.  Respondents are entitled to costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


      /s/      
HORST, J.\*

We concur:


   /s/   
DUARTE, Acting P. J.


   /s/   
RENNER, J.


---

\* Judge of the Placer County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.